**Anni WATERFLOW, Plaintiff,**

v.

**Joseph GALLANT, Commissioner of the Massachusetts Department of Public Welfare, Defendant and Third–Party Plaintiff,**

v.

**Edward MADIGAN, Secretary of the United States Department of Agriculture, and Betty Jo Nelson, Administrator of the Food and Nutrition Service of the United States Department of Agriculture, Third–Party Defendants.**

**Civ. A. No. 90–12143–Z.**

United States District Court,
D. Massachusetts.

July 3, 1991.

Linda M. Long, Ellen N. Wallace, Greater Boston Legal Services, Boston, Mass., for Anni Waterflow.

Ruth A. Bourquin, Atty. General's Office, Judith S. Yogman, U.S. Attorney's Office, Boston, Mass., for Joseph Gallant and Betty Jo Nelson.

Thomas Millet, Elaine Romberg, Dept. of Justice, Civ. Div., Federal Programs Branch, Washington, D.C., for Edward Madigan.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

Plaintiff Anni Waterflow has been disabled for the past six years, during which time she has received Social Security Disability Income (SSDI) and Supplemental Security Income (SSI). She has developed a Plan to Achieve Self Support (PASS), however, which has been approved by the Social Security Administration (SSA). As the name suggests, a PASS is intended to help recipients of SSI become self-supporting by permitting them to set aside income or resources for a specific occupational goal, such as education, training, or purchase of work-related equipment, without losing eligibility for or entitlement to SSI benefits. *See* 20 C.F.R. § 416.1180 (1990); SSA Interpretive Rules 870.001(B). For example, Ms. Waterflow's PASS requires her to set aside her entire SSDI payment in a separate bank account to be saved for the purchase of a mini-van, which will further her goal of becoming a writer while accommodating her extreme sensitivity to environmental chemicals. The monies in her PASS account must remain segregated from other funds, and if she uses them for any other purpose, her PASS is terminated and the monies in the account are considered a resource, potentially terminating her eligibility for SSI as well. 20 C.F.R. §§ 416.-1181, 416.1182. Because the set-aside income from the SSDI payments is excluded from consideration in determining her SSI benefits, pursuant to 42 U.S.C. § 1382a(b)(4)(A) (1988), her SSI benefits have been increased and she therefore receives only slightly less in total SSA benefits than she did before she embarked upon her plan.

The difficulty for Ms. Waterflow is that while her benefit level from SSA has remained roughly the same, her food stamp allotment from the third-party defendant Food and Nutrition Service (FNS) of the U.S. Department of Agriculture, via the defendant Massachusetts Department of Public Welfare (DPW),[1] has not. She now appeals from a final agency decision by the DPW to reduce her food stamp allotment from approximately $68 to $10 per month. She argues that in calculating the allotment of food stamps to which she is entitled, DPW is illegally including the PASS account funds which should be excluded pursuant to 7 U.S.C. § 2014(d)(5) (1988), and the regulations the Secretary of Agriculture has promulgated thereunder at 7 C.F.R. § 273.9(c)(5) (1991).

For its part, the DPW has submitted affidavits stating that it is bound to administer the Food Stamp Program in compli-

---

1. The DPW administers the Food Stamp Program in the Commonwealth, but it must comply with FNS regulations. Food Stamp benefits are entirely federally funded.

ance with the FNS's interpretation of the food stamp regulations, but that it will comply with this Court's determination of how the funds in question should be treated. The FNS and the Secretary of Agriculture (also a third-party defendant) insist that whatever the SSA's rules may be regarding income exclusions, food stamp rules oblige them to consider the PASS funds as income to Ms. Waterflow, and that they must reduce her allotment accordingly. Both Ms. Waterflow and the third-party defendants have moved for summary judgment;[2] they agree that there is no material issue of fact.

The parties do not dispute that the PASS funds are income to Ms. Waterflow as an initial matter; where the disagreement lies is whether they fall under one of the fifteen categories of statutory exclusion from income for purposes of calculating her monthly allotment of food stamps. *See* 7 U.S.C. § 2014(d). Ms. Waterflow urges that the PASS funds fall under the fifth category listed in § 2014: "reimbursements which do not exceed expenses actually incurred and which do not represent a gain or benefit to the household...." 7 U.S.C. § 2014(d)(5).[3]

Perusal of the applicable regulation leaves no doubt that the PASS funds fall under this exclusion:

> (5) Reimbursements for past or future expenses, to the extent they do not exceed actual expenses, and do not represent a gain or benefit to the household. Reimbursements for normal household living expenses such as rent or mortgage, personal clothing, or food eaten at home are a gain or benefit and, therefore, are not excluded. To be excluded, these payments must be provided specifically for an identified expense, other than normal living expenses, and used for the purpose intended....

7 C.F.R. § 273.9(c)(5). The PASS funds have been set aside specifically for the purchase of a mini-van in furtherance of Ms. Waterflow's occupational goal. As such, they are a reimbursement for the future expense of purchasing the mini-van, which is not a normal living expense as contemplated by the regulation. The PASS funds in this case are comparable to an example of an excludable reimbursement given in the FNS regulation, namely, one "for job- or training-related expenses such as travel, per diem, uniforms, and transportation to and from the job or training site." 7 C.F.R. § 273.9(c)(5)(i)(A).

The third-party defendants attempt to avoid the clear language of their own regulation in a number of ways. They rely on Webster's Dictionary to suggest that the PASS funds are not "reimbursements" because they are payments for expenses that have not yet been incurred, but of course the regulation provides the relevant text here. It unequivocally states that the reimbursements can be for future expenses. The defendants then argue that although the payments can be for future expenses, they cannot be for expenses "years in the future." Again, however, the regulation does not provide any time limit on how far in the future the expenses which are presently being reimbursed may occur.

Defendants also argue that the PASS funds are not "earmarked" for a specific purpose according to the "agency's definition," but they offer no definition of what is required for such "earmarking." It is indisputable in any case that the Social Security Administration has specified that the funds be used only for the occupational objective of the individual's plan. SSA Interpretive Rule 870.030(E)(1)(a).[4] There is a risk that the recipient may use the funds for other than the specified purposes, but the risk of misuse is always present when one provides money for a future expense. It is important to remember that such a

---

2. Third-party defendants style their motion as one for judgment on the pleadings, but as they have submitted material extraneous to the pleadings, their motion shall be treated as one for summary judgment pursuant to Fed.R.Civ.P. 56. *See* Fed.R.Civ.P. 12(c).

3. She also urges that the PASS funds fall under the exclusion at § 2014(d)(10), which I do not address here.

4. *Shaffer v. Block*, 705 F.2d 805 (6th Cir.1983), is not on point. Here it is the grantor, not the recipient as in *Shaffer*, who has specified what the funds are to be used for.

misuse is not without consequences for the recipient of PASS funds, including possible loss of SSI and food stamp eligibility.

Defendants also argue that the mini-van will almost certainly be used for normal household transportation as well as work-related transportation, but those facts are not before me as Ms. Waterflow has yet to purchase her mini-van.

"It is well established 'that an agency's construction of its own regulations is entitled to substantial deference,'" but a reviewing court is not obliged to give effect to an agency's interpretation when it is not "reasonable," that is, when the interpretation does not "'sensibly conform[] to the purpose and wording of the regulations.'" *Martin v. Occupational Safety and Health Review Comm'n,* — U.S. —, 111 S.Ct. 1171, 1175–76, 113 L.Ed.2d 117 (1991) (citations omitted). Here, the Secretary's and the FNS's interpretation of the food stamp regulations is not reasonable, and therefore cannot be given effect.

Plaintiff's summary judgment motion is granted, third-party defendants' motion for summary judgment is denied. Judgment may be entered declaring that plaintiff's PASS account funds are excludable income pursuant to 7 U.S.C. § 2014(d)(5); 7 C.F.R. § 273.9(c)(5); and Mass.Regs.Code tit. 106, § 363.230(F) (1990), and ordering the state defendant to exclude from income PASS monies set aside on Ms. Waterflow's behalf in calculating her allotment of food stamps.