STATE OF MISSISSIPPI, OFFICE OF
THE GOVERNOR DIVISION OF
MEDICAID, Petitioner,

v.

Louis W. SULLIVAN, Secretary of U.S.
Department of Health and Human
Services, et al., Respondents.

No. 90–4795.

United States Court of Appeals,
Fifth Circuit.

Jan. 17, 1992.

Kelly Knivila, Covington & Burling, Washington D.C., Mitzi E. Dease, Spec. Asst. Atty. Gen., Div. of Medicaid, Jackson, Miss., for petitioner.

David S. Cade, Dept. of Health and Human Services, Gen. Counsel, Washington, D.C., Hank Eigles, Office of the Gen. Counsel, Dept. of Health and Human Services, Baltimore, Md., for respondents.

Before THORNBERRY, DAVIS and WIENER, Circuit Judges:

W. EUGENE DAVIS, Circuit Judge:

The State of Mississippi (Mississippi) appeals the order of the Administrator of the Health Care Financing Administration imposing a penalty on Mississippi for violations of federal Medicaid rules. Because Mississippi's policies were protected under a congressional moratorium and did not violate any other provision of the Social Security Act, we reverse.

### I.

Medicaid is jointly administered and financed by states and the federal government to provide needy persons financial aid for medical care. The Secretary of Health and Human Services (the Secretary) delegates oversight of the Medicaid program to the Health Care Financing Administration (HCFA). States choose whether they wish to participate in the Medicaid program. All participating states must submit Medicaid plans to the HCFA for approval, detailing the state's Medicaid procedures and policies. A participating state *must* provide aid to three categories of persons described in § 1902(a)(10)(A)(i) of the Social Security Act (the Act)[1]: those who receive cash assistance under the Supplemental Security Income for the Aged, Blind, and Disabled (SSI) program; and the Aid to Families with Dependent Children (AFDC) program (together, the "categorically needy"); and those who are "medically needy" under § 1902(a)(10)(C).

In addition, a State *may* elect to provide aid to the "optional categorically needy" of § 1902(a)(10)(A)(ii). These persons satisfy all eligibility requirements of the categorically needy, except they have too many financial resources to qualify as categorically needy. There are eleven subcategories of the optional categorically needy. At issue here is Mississippi's treatment of one such subcategory: those who are in medical institutions for at least thirty days (primarily nursing homes). § 1902(a)(10)(A)(ii)(V). These are known as "Category V" persons.

Under HCFA rules, states currently have two options for determining the Medicaid eligibility of optional categorically needy persons. A state may establish its own eligibility criteria, or it may provide Medicaid to all persons eligible for SSI. A state that uses its own criteria is known as a "209(b) state"; a state that ties its aid to SSI criteria has "1634 status."[2] States must choose which *one* method to employ to all potential recipients. Mississippi was a 209(b) state until it converted to 1634 status on July 1, 1981.

Though Mississippi applied the SSI eligibility criteria to all new Category V applicants after July 1, 1981, it did not redetermine the eligibility of the ten thousand Category V persons who were currently receiving aid; instead, Mississippi chose to phase in the new SSI criteria over the

**1.** Section 1902 of the Social Security Act is codified at 42 U.S.C. § 1396a.

**2.** The terms "209(b) state" and "1634 status" derive from their enacting statutes. *See* Social Security Amendments of 1972, Pub.L. No. 92–603, § 209(b), 86 Stat. 1329, 1381–82, reprinted in 1972 U.S.Code Cong. & Admin.News 1548, 1612–13, now codified at 42 U.S.C. § 1396a(f); Social Security Act § 1634, now codified at 42 U.S.C. § 1383c(a).

course of the year as each recipient came up for his annual eligibility review. In other words, as each recipient came up for review, his eligibility was determined under the SSI criteria. The recipient's aid was either continued or terminated depending upon whether he or she met the SSI criteria. Mississippi's conversion to 1634 status resulted in an increase in the number of persons eligible for Medicaid benefits in that state; that is, more recipients satisfied the SSI criteria than satisfied the 209(b) criteria. But Mississippi's 209(b) criteria were more generous to Category V persons than the corresponding SSI criteria. Thus, because of Mississippi's phase-in policy, some Category V persons continued to receive Medicaid assistance during that year who would not have received such aid had the proper SSI criteria been used. In short, Mississippi distributed more Category V aid than HCFA rules permitted. In its periodic audit of Mississippi's program, the HCFA discovered these overpayments and informed Mississippi that it was subject to a potential fine of $732,509.

In 1984, as part of the Deficit Reduction Act of 1984 (DEFRA 1984), Congress imposed a moratorium that forbade the HCFA from taking any adverse action against states that violated § 1902(a)(10) by using eligibility procedures that were more liberal than the corresponding SSI criteria.

The moratorium was made retroactive to October 1, 1981. Congress amended the moratorium in 1987 (Medicare and Medicaid Patient and Program Protection Act of 1987 (MMPPPA 1987)). The question presented to us is whether the moratorium protects Mississippi from the penalty HCFA imposed against it.

Mississippi received a hearing before the HCFA and was denied relief. The Administrator of the HCFA affirmed the hearing officer's decision, and this appeal followed.

## II.

The Secretary concedes that the DEFRA 1984 moratorium would protect Mississippi's policies had Mississippi violated § 1902(a)(10) by wrongfully applying more-liberal § 209(b) criteria to all recipients.[3] The Secretary argues, however, that Mississippi forfeited this protection by applying its eligibility requirement in a discriminatory manner in violation of § 1902(a)(17). Mississippi contends that the moratorium protects its phase-in procedure.

## A.

◼ The Secretary argues first that the HCFA hearing officer correctly denied protection because Mississippi does not comply with the moratorium's precise terms. The moratorium applies to state plans "having

---

3. The moratorium currently provides that:
   (1) The Secretary of Health and Human Services shall not take any compliance, disallowance, penalty, or other regulatory action against a State with respect to the moratorium period described in paragraph (2) by reason of such State's plan described in paragraph (5) under title XIX of the Social Security Act [Medicaid] ..., or in the operation thereunder, being determined to be in violation of clause (IV), (V), or (VI) of section 1902(a)(10)(A)(ii) or section 1902(a)(10)(C)(i)(III) of such Act on account of such plan's (or its operation) having a standard or methodology which the Secretary interprets as being less restrictive than the standard or methodology required under such section, provided that such plan (or its operation) does not make ineligible any individual who would be eligible but for the provisions of this subsection.
   (2) The moratorium period is the period beginning on October 1, 1981, and ending [February 17, 1989].

....
   (5) In this subsection, a State plan is considered to include—
      (A) any amendment or other change in the plan which is submitted by the State to the Secretary, or
      (B) any policy or guideline delineated in the Medicaid operation or program manuals of the State which are submitted by the state to the Secretary,
   whether before or after the date of enactment of this Act and whether or not the amendment or change, or the operating or program manual was approved, disapproved, acted upon, or not acted upon by the Secretary.
Deficit Reduction Act of 1984, Pub.L. No. 98–369 § 2373(c), 98 Stat. 1112, as amended by the Medicare and Medicaid Patient and Program Protection Act of 1987, Pub.L. No. 100–93 § 9, 101 Stat. 695, and codified at 42 U.S.C.A. § 1396a Note (West Supp.1991).

a standard or methodology" that is more liberal than the SSI standard or methodology. The hearing officer denied protection to Mississippi's phase-in policy because "a scheme that uses different sets of resource rules for determining the eligibility of individuals at different times within an eligibility/group cannot reasonable [sic] be considered *a* 'single standard' or 'methodology' as contemplated in the statute." (Emphasis in original.)

We consider Mississippi's phase-in policy to be a single methodology. There is no reason why a single methodology cannot have two subparts. Indeed, the ordinary definition of "methodology" contemplates as much: "the process*es*, technique*s*, or approach*es* employed in the solution of a problem or in doing something." Philip Babcock Gove, *Webster's Third New International Dictionary* 1423 (1981) (unabridged). Thus the Secretary's semantic argument is without merit. Mississippi's phase-in policy constitutes a single methodology and satisfies the moratorium's terms. We turn, therefore, to the Secretary's main argument concerning subsection (a)(17).

### B.

■ The Secretary argues next that Mississippi's phase-in policy violates the comparability requirement of § 1902(a)(17) and that the moratorium does not protect such a violation. Although we have considerable doubt that the moratorium would not also protect any (a)(17) violations that did occur, we need not address this issue because we find that Mississippi did not violate subsection (a)(17). Section 1902(a)(17) provides that:

A State plan for medical assistance must—

(17) ... include reasonable standards *(which shall be comparable for all groups* and may, in accordance with standards prescribed by the Secretary, differ with respect to income levels, but only in the case of applicants or recipients of assistance under the plan who are not receiving aid or [cash] assistance ..., based on the variations between shelter costs in urban areas and in rural areas) for determining eligibility for and the extent of medical assistance under the plan

. . . .

42 U.S.C.A. § 1396a(a)(17) (West Supp. 1991) (emphasis added). The Secretary contends that this subsection requires that all persons *within* a group be treated "comparably." The Secretary contends further that Mississippi violated this requirement by applying the old § 209(b) criteria to existing nursing home patients during the phase-in period while it simultaneously employed the new SSI criteria for new nursing home patients. Mississippi responds that subsection (a)(17) requires comparability *among* groups, not *within* groups, and that it satisfied this requirement by applying the same phase-in to all the relevant groups in Category V.

"Groups" are statutorily defined in section 1905(a) of the Social Security Act. 42 U.S.C. § 1396d(a). Aged persons form one "group"; blind persons form a second; disabled persons form still a third; etc. No "group" is defined in terms of the date of an individual's eligibility determination. Thus, when Mississippi distinguishes between those who were already receiving Medicaid before July 1, 1981 (until their annual eligibility review), and those who apply for Medicaid after July 1, 1981, it is not distinguishing between "groups" as defined by the statute. Rather, it is distinguishing along temporal lines for all "groups": the aged, the blind, the disabled, etc. In other words, Mississippi concedes that it would violate subsection (a)(17) if it had one eligibility rule for the blind group and another for the aged group, but contends that so long as the eligibility rules are identical for all groups, its standards are "comparable for all groups," as required by subsection (a)(17).

■ The Secretary contends that comparability among groups is impossible unless comparability is maintained within groups. This may be true generally in the abstract, but we are faced with a much more concrete question: whether subsection (a)(17) requires comparability within groups.

The structure of the Act supports Mississippi's view that subsection (a)(17) was

meant to ensure comparability *between* groups, while subsection (a)(10) was meant to ensure comparability *within* groups. When Medicaid was first enacted, subsections (a)(10) and (17) both had comparability requirements. *See* §§ 1902(a)(10)(B)(i) and (a)(17), Pub.L. No. 89–97, 79 Stat. 345–46 (1965). The comparability requirement of subsection (a)(10)(B)(i) clearly required comparability within groups.[4] Congress had no reason to impose the same requirement in two different subsections, and the Secretary has not persuaded us otherwise. In amendments since 1965, Congress has deleted the comparability language of (a)(10)(B) and included it in a uniform standard for the medically needy in § 1902(a)(10)(C)(i)(III). Congress has not altered the structure of subsection (a)(17) since 1965. Thus the distinction between comparability requirements remains the same today.

Mississippi's argument is further buttressed by the legislative history accompanying the enactment of Medicaid. In discussing subsection (a)(17), the Senate Report states:

> Although States may set a limitation on income and resources which individuals may hold and be eligible for aid, they must do so by maintaining a *comparability among the various categorical groups* of needy people. *Whatever level of financial eligibility the state determines to be that which is applicable for the eligibility of the needy aged, for example, shall be comparable to that which the State sets to determine the eligibility for the needy blind and disabled;* and must also have a comparability to the standards used to determine the eligibility of those who are to receive medical assistance as needy children and the parents or other relatives caring for them.

S.Rep. No. 404, 89th Cong., 1st Sess. 77–78, reprinted in 1965 U.S.Code Cong. & Admin.News 1943, 2018 (emphasis added). The Secretary points to no legislative history supporting his interpretation of the statute.

We therefore conclude that § 1902(a)(17) requires comparability only among groups, not within them. Accordingly, Mississippi is not in violation of subsection (a)(17).

### III.

The Administrator erred in denying Mississippi moratorium protection for its Medicaid eligibility criteria. For the reasons stated above, congressional intent is clear and the Secretary is not entitled to deference under *Chevron v. NRDC,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Accordingly, the order of the Administrator is

REVERSED.

---

**4.** Section 1902(a)(10)(B)(i) provided that:
(a) A State plan for medical assistance must—
(10)(B) if medical or remedial care and services are included for any group of individuals who are not receiving aid or assistance under any such State plan and who do not meet the income and resources requirements of the one of such States plans which is appropriate, as determined in accordance with standards prescribed by the Secretary, provide—

(i) for making medical or remedial care and services available to all individuals who would, if needy, be eligible for aid or assistance under any such State plan and who have insufficient (*as determined in accordance with comparable standards* ) income and resources to meet the costs of necessary medical or remedial care and services ...
79 Stat. 345 (1965) (emphasis added).