Paul E. **SPRAGENS**, Plaintiff–Appellee,

v.

**Donna E. SHALALA**, Secretary of Health and Human Services, Defendant–Appellant.

No. 93–8067.

United States Court of Appeals, Tenth Circuit.

Sept. 22, 1994.

Anthony T. Wendtland of Burgess, Davis & Cannon, Sheridan, WY (John M. Burman, Attorney, University of Wyoming, Legal Services Program, Laramie, WY, with him on the brief), for plaintiff-appellee.

Alfred R. Mollin, Attorney (Frank W. Hunger, Asst. Atty. Gen., Richard A. Stacy, U.S. Atty., and William Kanter, Attorney; with him on the brief), U.S. Dept. of Justice, Civ. Div., Washington, DC, for defendant-appellant.

Before MOORE, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and ROSZKOWSKI, Senior District Judge.[*]

McWILLIAMS, Senior Circuit Judge.

This is a Social Security case involving a constitutional challenge to a federal statute and administrative regulations promulgated pursuant thereto.

Paul E. Spragens suffers from arthrogryposis[1] and because of that condition he has received for many years disability and disability insurance benefits under the Social Security Act. 42 U.S.C. §§ 401–33 (1988 & Supp.1992). Following periodic disability review, the Social Security Administration in September, 1988, found that from January, 1986, through December, 1986, Spragens' average net earnings from independent self-employment were $349.26 per month. At that point in time the applicable regulation provided that a person who had net earnings of at least $300 per month was engaged in "substantial gainful activity" and because of that was no longer eligible for Social Security benefits, regardless of his or her physical condition. 42 U.S.C. § 423(d)(4) (1988); 20 CFR 404.1574(b)(2)(vi). Accordingly, Spragens' Social Security benefits ceased.

---

[*] Honorable Stanley J. Roszkowski, Senior District Judge, Northern District of Illinois, sitting by designation.

[1]. Arthrogryposis is an irreversible and non-progressive congenital deformity of the joints. The disease has left Spragens with no use of his arms and limited use of his legs. He uses a motorized wheelchair for mobility. Despite the severity of his disability, Spragens is able to type on a computer keyboard with his toes, and works as a self-employed indexer of books.

Spragens sought, and obtained, review by an Administrative Law Judge (ALJ). At the hearing Spragens did not challenge the administrative ruling that because he received $300 or more per month from his independent self-employment he was no longer eligible for Social Security benefits under the then existing rules and regulations. He attempted to challenge before the ALJ, however, the $300 figure on the basis that he was denied his equal protection rights, because by separate regulation blind persons were allowed to receive $650 net earnings per month before he, or she, became ineligible for Social Security benefits. 42 U.S.C. § 423(d)(4); 42 U.S.C. § 403(f)(8)(D); 20 CFR 404.430(d)(ix); 20 CFR 404.1584(d).

The ALJ upheld the administrative ruling that because Spragens received more than $300 net earnings per month he was no longer eligible for any Social Security benefits. The ALJ declined to address Spragens' constitutional challenge to the $300 limitation. On review, the Appeals Council affirmed the ALJ.

Spragens then brought the present action in the United States District Court for the District of Wyoming. Spragens' basic position was that because of the $300 per month limitation placed on his allowable net earnings from independent self-employment, as contrasted with the $650 per month limitation afforded blind persons, he was denied equal protection. Spragens did not contest the action of the Secretary in holding that under the law as it then existed, he was no longer eligible for Social Security benefits since his net earnings were more than $300 per month.

The Secretary moved to affirm the Appeals Council. Spragens moved for summary judgment on that part of his complaint which challenged the constitutionality of the $300 per month limitation. After hearing, the district court granted the Secretary's motion to affirm the administrative decision that because he had net earnings of more than $300 per month, Spragens was no long-

er entitled to Social Security benefits, "regardless of the severity of his impairments."

At the same time, the district court went on to consider Spragens' equal protection argument. The district court ruled in favor of Spragens on his equal protection argument and concluded that granting blind persons the right to receive $650 net earnings per month before losing Social Security benefits, as opposed to granting one situated as is Spragens only $300 net earnings per month before losing his Social Security benefits, was "arbitrary and discriminatory" and that the $650 per month figure granted blind persons did not have "a fair and substantial relationship to the object of the legislation."

Accordingly, the district court held that 42 U.S.C. § 423(d)(4), and the regulations issued pursuant thereto, as applied to Spragens, violated the equal protection component of the Fifth Amendment.[2] For relief, the district court ordered the Secretary "to reinstate Spragens' eligibility to receive disability benefits," and the court further decreed that Spragens did not owe the Social Security Administration any amount for alleged overpayment. *See Spragens v. Secretary of Health & Human Servs.*, 808 F.Supp. 1537 (D.Wyo.1992). The Secretary now appeals.

Spragens' position in this Court, as it was in the district court, is that because a blind person, under applicable statute and regulations, is permitted to receive $650 net earnings per month before he, or she, becomes ineligible for Social Security benefits, whereas he may only receive $300 net earnings per month before he becomes ineligible for Social Security benefits, he has been denied equal protection of the laws. The obvious "reverse side" of this argument is that if blind persons were not allowed by statute and regulations to receive $650 net earnings per month before becoming ineligible for Social Security benefits, and were only allowed $300 net earnings per month, Spragens would have no equal protection argument.

*Mathews v. De Castro*, 429 U.S. 181, 97 S.Ct. 431, 50 L.Ed.2d 389 (1976) involved a

---

**2.** It is well established that the Due Process Clause of the Fifth Amendment "encompasses equal protection principles." *Mathews v. De*

*Castro*, 429 U.S. 181, 182 n. 1, 97 S.Ct. 431, 432 n. 1, 50 L.Ed.2d 389 (1976).

constitutional challenge based on Fifth Amendment due process rights to Social Security regulations which, according to the plaintiff in that action, violated her equal protection rights in that they favored a *married* woman under 62 years of age who had minor children and whose husband retired or became disabled as contrasted with a divorced woman whose ex-husband retired but who was otherwise similarly situated as was the married woman. More will be said about the details of that case later. At this point, we would simply quote from that opinion concerning the general principles to be followed in considering Spragens' argument in this Court:

> The basic principle that must govern an assessment of any constitutional challenge to a law providing for governmental payments of monetary benefits is well established. Governmental decisions to spend money to improve the general public welfare in one way and not another are "not confided to the courts. The discretion belongs to Congress, unless the choice is clearly wrong, a display of arbitrary power, not an exercise of judgment." *Helvering v. Davis*, 301 U.S. 619, 640 [57 S.Ct. 904, 908, 81 L.Ed. 1307 (1937)]. In enacting legislation of this kind a government does not deny equal protection "merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'" *Dandridge v. Williams*, 397 U.S. 471, 485 [90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970)].

To be sure, the standard by which legislation such as this must be judged "is not a toothless one," *Mathews v. Lucas*, 427 U.S. 495, 510 [96 S.Ct. 2755, 2764, 49 L.Ed.2d 651 (1976)]. But the challenged statute is entitled to a strong presumption of constitutionality. "So long as its judgments are rational, and not invidious, the legislature's

efforts to tackle the problems of the poor and the needy are not subject to a constitutional straitjacket." *Jefferson v. Hackney*, 406 U.S. 535, 546 [92 S.Ct. 1724, 1731, 32 L.Ed.2d 285 (1972)]. It is with this principle in mind that we consider the specific constitutional issue presented by this litigation.

*Mathews v. De Castro*, 429 U.S. at 185, 97 S.Ct. at 434.

■ In the instant case, the district court concluded that the traditional "rational basis" test between the "challenged classification" and the "legitimate government interest" was not the proper standard and that a more exacting standard should be used since Spragens was severely disabled and was going to lose all Social Security benefits. We disagree and hold that the "rational basis" test is the proper standard for review. *See Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). In *Cleburne* the Supreme Court held that mentally retarded persons were not even a "quasi-suspect class," and that accordingly, a stricter scrutiny than "rational basis" was not required. *Id.* at 446, 105 S.Ct. at 3257–58. In our view, a classification applying to blind persons is not suspect, or even quasi-suspect, and we therefore apply the "rational basis" standard, rather than some more strict one, to the instant case. All of which may be academic in a sense, since, regardless of the standard used, the result in the instant case would, in our view, be the same.

■ Is there a rational relationship between granting a blind person, but not granting a non-blind person who is otherwise disabled, a preference by allowing him, or her, to receive $650 net earnings per month before becoming ineligible for Social Security benefits, whereas the non-blind disabled person is only granted $300 net earnings per month before becoming ineligible for Social Security benefits? We think there is a reasonable basis therefor.[3] In our view, it is

---

**3.** While the rational basis standard still requires "some footing in the realities of the subject addressed by the legislation," *Heller v. Doe*, —— U.S. ——, ——, 113 S.Ct. 2637, 2643, 125 L.Ed.2d 257 (1993), the statute should be upheld

if there is "any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Communications, Inc.*, —— U.S. ——, ——, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993). The legislature is not

reasonable to conclude that blind persons are in a less favorable position than others who, though suffering from disabilities, nonetheless still have their eyesight. And the fact, if it is a fact, that Spragens may have "more disability" than *some* blind persons does not change the result. *See Mathews v. De Castro, supra.* A classification scheme of this sort does not have to be perfect.

In support of our resolution of this matter, *see, e.g., Mathews v. De Castro, supra,* and *Okla. Educ. Ass'n v. Alcoholic Beverage Laws Enforcement Comm'n,* 889 F.2d 929 (10th Cir.1989).

In *Mathews* there was a Fifth Amendment due process challenge to Social Security regulations which granted benefits to a *married* woman under 62 whose husband retired or became disabled, if she had a minor or other dependent child, but did *not* grant similar benefits to a divorced woman who was also under 62 and had a young or disabled child in her care when her ex-husband retired or became disabled. In rejecting a divorced woman's constitutional challenge to these regulations, the Supreme Court applied the "rational basis" test and concluded that it was not "irrational" for Congress to recognize that "divorced couples typically live separate lives" and that such could be considered in deciding not to grant divorced women under 62 benefits when their ex-husband retires or becomes disabled, and further, that Congress could "rationally decide that the problems created for divorced women remained less pressing than those faced by women who continue to live with their husbands." *Mathews v. De Castro,* 429 U.S. 181, 189, 97 S.Ct. 431, 436, 50 L.Ed.2d 389 (1976).

Although *Oklahoma Education Association, supra,* does not involve an equal protection challenge to a Social Security regulation, we nonetheless believe it supports our resolution of the present controversy. In that case there was a constitutional challenge based on due process and equal protection grounds by state employees to a state constitutional provision, and an implementing state statute, which prohibited state employees from obtaining a state liquor license or working in an alcoholic beverage business that required such license. After determining that "state employees" were not a suspect or quasi-suspect class and that accordingly, the rational relationship test should be used instead of a more exacting one, we concluded that there was a rational basis for prohibiting state employees from simultaneously working in the alcoholic beverage industry. The state's declared purposes for the legislation were threefold:

> (1) to prevent direct conflicts of interest with those state employees who have some authority over the administration and enforcement of the state's liquor laws; (2) to prevent the public perception that the state is involved with liquor trafficking; and (3) to prevent the state's encouragement of liquor consumption.

*Okla. Educ. Ass'n v. Alcoholic Beverage Laws Enforcement Comm'n,* 889 F.2d at 933–34. We held that the Oklahoma statutory provisions were rationally related to further those goals.[4]

The judgment of the district court granting Spragens summary judgment on his equal protection claim is reversed. Otherwise, the district court's judgment is affirmed.

---

under an obligation to produce evidence that its classification is reasonable, and indeed the classification may be based on "rational speculation unsupported by evidence or empirical data." *Id.* at ——, 113 S.Ct. at 2102. Legislation which confers monetary benefits is accorded a strong presumption of validity, because "Congress should have discretion in deciding how to expend necessarily limited resources." *Schweiker v. Wilson,* 450 U.S. 221, 238, 101 S.Ct. 1074, 1085, 67 L.Ed.2d 186 (1981).

4. *See also Tuttle v. Secretary of Health, Education & Welfare,* 504 F.2d 61 (10th Cir.1974), where we held that a classification under the Social Security Act does not offend the constitution "because in practice it results in some inequality." *Id.* at 63 (quoting *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911)), and where we said that the test is whether the statute (or implementing regulation) manifests a patently arbitrary classification, and is utterly lacking in rational justification. *Tuttle,* 504 F.2d at 62.