**Karen VAUGHN, et al., Plaintiff,**

v.

**Cheryl SULLIVAN, et al., Defendant.**

**No. IP 93–1600 C B/S.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Oct. 19, 1995.

Kenneth J. Falk, Legal Services Organization of Indiana, Indianapolis, Indiana, for plaintiff.

Brian D. Scott, Deputy Attorney General, Indianapolis, IN, for defendant.

## ENTRY

BARKER, Chief Judge.

This case involves a challenge to the way the State of Indiana administers plans to achieve self support ("PASS" or "PASS plans") and the Medicaid Act. As will be discussed in more detail below, participation in a PASS allows a disabled individual to earn "extra" income without necessarily disqualifying him or her from receiving other government-provided benefits. The State of Indiana excludes PASS income from consideration in determining Medicaid eligibility only if the disabled person is blind. Plaintiffs bring this class action because the State does not extend this benefit to sighted disabled persons.

## I. FACTUAL BACKGROUND.

### A. Statutory Framework

The Medicaid program was established in 1965 as a way for the states and the federal government to provide medical assistance to the needy. Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.* As originally enacted, Medicaid required participating states to provide medical assistance to individuals who received cash payments under four joint federal/state welfare programs administered by the states. In 1972 Congress replaced three of the four programs with a new federal program, Supplemental Security Income for the Aged, Blind, and Disabled ("SSI"), 42 U.S.C. § 1381 *et seq.; see generally, Herweg v. Ray,* 455 U.S. 265, 102 S.Ct. 1059, 71 L.Ed.2d 137 (1982); *Schweiker v. Gray Panthers,* 453 U.S. 34, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981).

The establishment of SSI increased the number of individuals previously ineligible for assistance under the state programs. Fearing that many states would leave the Medicaid program rather than expand their Medicaid coverage, Congress enacted 42 U.S.C. § 1396a(f), which has become known as the section 209(b) option.[1] *Herweg,* 455 U.S. at 268, 102 S.Ct. at 1063. The section 209(b) option permits states to use Medicaid eligibility requirements for the blind, aged and disabled that are more restrictive than the eligibility requirements used by the federal government to determine SSI eligibility. However, section 209(b) prohibits states from imposing stricter eligibility standards than those in place on January 1, 1972. *Mattingly v. Heckler,* 784 F.2d 258, 262 n. 3 (7th Cir. 1986) (section 209(b) state can elect to provide Medicaid assistance only to "those individuals who met the eligibility requirements for the state administered programs on January 1, 1972, rather than determining Medicaid eligibility according to the standards of the new SSI program"). The State of Indiana has elected to be a section 209(b) state.

One of the objectives of the SSI program is to supply "[i]ncentives and opportunities

---

1. Section 209(b), as codified at 42 U.S.C. § 1396a(f), provides:

 Notwithstanding any other provision of this subchapter, except as provided in subsection (e) of this section and section 1382h(b)(3) of this title, no State not eligible to participate in the State plan program established under subchapter XVI of this chapter shall be required to provide medical assistance to any aged, blind, or disabled individual (within the meaning of subchapter XVI of this chapter) for any month unless such State would be (or would have been) required to provide medical assistance to such individual for such month had its plan for medical assistance approved under this subchapter and in effect on January 1, 1972, been

 in effect in such month, except that for this purpose any such individual shall be deemed eligible for medical assistance under such State plan if (in addition to meeting such other requirements as are or may be imposed under the State plan) the income of any such individual as determined in accordance with section 1396b(f) of this title (after deducting any supplemental security income payment and State supplementary payment made with respect to such individual, and incurred expenses for medical care as recognized under State law regardless of whether such expenses are reimbursed under another public program of the State or political subdivision thereof) is not in excess of the standard for medical assistance

for those able to work or to be rehabilitated that will enable them to escape from their dependent situations." *Panzarino v. Heckler*, 624 F.Supp. 350, 353 (S.D.N.Y.1985) (quoting H.Rep. 92–231, 1972 U.S.C.C.A.N. 4989, 5133). The PASS program was conceived as one method of doing so. As its name implies, PASS exclusions are intended to expand opportunities for recipients of SSI to "become self-supporting by permitting them to set aside income or resources for a specific occupational goal, such as education, training or purchase of work-related equipment, without losing eligibility for or entitlement to SSI benefits." *Waterflow v. Gallant*, 767 F.Supp. 393, 394 (D.Mass.1991). As a result, SSI recipients who are approved to participate in a PASS are permitted to take jobs and earn income without losing their SSI benefits. 42 U.S.C. §§ 1382a(b)(4) and 1382b(a)(4).[2]

Indiana's Medicaid program treats blind and sighted PASS participants differently. Blind recipients, for example, can have income earned under an approved PASS plan disregarded for a period of up to twelve months.[3] Blind PASS participants are also exempted from Indiana's Medicaid resource limitations. 405 IAC 2–3–15(c)(9). There are no similar exemptions for sighted disabled PASS participants. As a result, a sighted PASS participant must incur a "spend down" in order to maintain eligibility under the Indiana Medicaid plan, thus requiring the recipient to pay her medical bills

until the excess income above the resource limit is spent. 405 IAC 2–3–10.

## B. The Named Plaintiffs

Plaintiff Matt Ravin suffers from chronic multiple sclerosis ("MS"). Because he has no control over his legs and cannot use his hands, he has been confined to a wheelchair. He cannot feed himself and needs an aide to assist him in getting up in the morning and into bed at night. Although he is totally disabled, he is not blind or visually impaired.

Mr. Ravin has been earning Social Security Disability benefits totaling $626 per month. This amount is greater than the maximum monthly income limit for Medicaid. Thus, Mr. Ravin has a monthly spend down of $164 per month, which is to say he must spend that much per month on medical expenses before he is eligible for Medicaid benefits. He has never had difficulty meeting this spend down requirement, however, because his medical expenses are so high.

Effective April 1, 1994, the Social Security Administration approved Mr. Ravin's proposed PASS, thus allowing him to set aside income for an occupational objective. Pursuant to his PASS, income of up to $1294.98 was excludable for purposes of determining his SSI eligibility. As a result, Mr. Ravin became eligible for $446 in monthly SSI benefits retroactive to April. He keeps these monies in a separate savings account where they are accumulating so that he can purchase a handicapped-accessible van.

established under the State plan as in effect on January 1, 1972.

2. Section 1382a(b) reads in pertinent part:
In determining the income of an individual (and his eligible spouse) there shall be excluded—
 * * * * * *
(4)(A) if such individual (or such spouse) is blind ... (iii) such additional amounts of other income, where such individual has a plan for achieving self-support approved by the Secretary, as may be necessary for the fulfillment of such plan,
(B) if such individual (or such spouse) is disabled but not blind ... (iv) such additional amounts of other income, where such individual has a plan for achieving self-support approved by the Secretary, as may be necessary for the fulfillment of such plan.
42 U.S.C. §§ 1382a(b)(4)(A)(iii) and 1382a(b)(4)(B)(iv) (1995 Supp.). Section 1382b(a)(4) reads in pertinent part:
In determining the resources of an individual (and his eligible spouse, if any) there shall be excluded—
 * * * * * *

(4) such resources of an individual who is blind or disabled and who has a plan for achieving self-support approved by the Secretary, as may be necessary for the fulfillment of such plan.
42 U.S.C. § 1382b(a)(4) (1995 Supp.).

3. The relevant portion of the Indiana Administrative Code provides in relevant part:

(b) Countable income is gross monthly income less the deductions and exclusions ... set forth in this section.
 * * * * * *
(7)(E) For an applicant/recipient of [medical assistance] under the blind category, an amount of his income, as specified in an approved plan for achieving self-support, is disregarded for a period of time not to exceed twelve (12) months.
405 IAC 2–3–3(b)(7)(E) (1991).

On November 21, 1994, Mr. Ravin began working part time as a community relations officer for a company doing work for Metro Bus of Indianapolis. He places all of his wages of $250 per week (gross) into his PASS account. His PASS plan has been adjusted by the SSA to exclude from consideration for purposes of determining his SSI eligibility all income he anticipates receiving from this employment.

Prior to his participation in the PASS program, Mr. Ravin was required to spend down $164 per month to remain eligible for state Medicaid benefits. Despite the approval of his PASS, this spend down requirement has not changed. Moreover, as a result of his three sources of income—SSI, disability and wages—Mr. Ravin is now ineligible for Medicaid benefits because his monthly resources exceed that program's $1500 monthly resource limit. 405 IAC 2–3–15.[4] If he were blind, however, these resources would not be counted for purposes of determining Medicaid eligibility.

Karen Vaughn is also a disabled Indiana Medicaid recipient with a PASS. She is a quadriplegic who became totally paralyzed from the neck down due to an August, 1976, shooting accident. Her PASS, which is to become a consultant on issues under the Americans with Disabilities Act, was approved in June of 1992. Once her PASS was approved, Ms. Vaughn became eligible for an extra $236 per month in SSI benefits. Currently, she receives monthly SSI benefits of $428 and Social Security Disability benefits of $278.

Like Mr. Ravin, Ms. Vaughn is dependent on Medicaid for her medical care. She worries that any additional income earned pursuant to her SSI PASS would jeopardize her continued eligibility for Medicaid benefits. Although Ms. Vaughn has been offered a consulting contract with an organization called Accessing Technology Through Awareness in Indiana, "she has not entered into the

... contract" for fear that she will become ineligible for Medicaid. (Second Amended Complaint, at ¶ 23).

On October 27, 1994, Plaintiffs filed their Second Amended Class Action Complaint, seeking to enjoin defendants from enforcing policies "which would count PASS monies or income generated from PASS plans in ways different than those provided in federal law." (Second Amended Complaint, p. 7). Plaintiffs' challenge is three-fold: (1) that the disparate treatment afforded blind PASS participants vis-à-vis sighted PASS participants violates section 1396a(a)(17) of the Medicaid Act; (2) that such treatment violates the Rehabilitation and Americans with Disabilities Acts; and (3) that such behavior violates the Equal Protection Clause of the United States Constitution. Each of these contentions will be addressed in turn.[5]

## II. DISCUSSION.

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The court must view all inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513; *Estate of Starks v. Enyart*, 5 F.3d 230, 232 (7th Cir.1993).

### A. Indiana's Disparate Treatment of PASS-generated Income and Resources Does Not Violate the Medicaid Act.

In determining eligibility for SSI, 42 U.S.C. § 1382a(b) excludes specific items from a recipient's "countable income," and § 1382b(a) excludes additional items from "countable resources." Included within these exemptions is income earned pursuant

---

4. The Medicaid eligibility of Mr. Ravin and Ms. Vaughn is currently protected by a stipulated preliminary injunction which was entered on in December, 1994, and February, 1994, respectively.

5. On January 10, 1995, after the parties had so stipulated, the Court certified a class consisting of "all past, present, and future non-blind Medicaid applicants or recipients who had, currently have, or will in the future have, Plans to Achieve Self Support (PASS) pursuant to 42 U.S.C. § 1382a(b)(4)(B)(iv) and 1382bb(a)(4)."

to a PASS plan, which is excluded under § 1382a(b)(4)(A) and (B), and resources necessary to fulfill the PASS under § 1382b(a)(4). *See Randall v. Broome County Social Services*, 1995 WL 236254, * 3 (N.D.N.Y. April 10, 1995).

Indiana's Medicaid program operates similarly to SSI for purposes of determining eligibility. For example, Indiana deducts income specified in an approved plan for achieving self-support for "an applicant/recipient of [medical aid] under the blind category." 405 IAC 2–3–3(b)(7)(E). Similarly, 405 IAC 2–3–15(c)(9) exempts from consideration resources specified in a PASS for blind recipients. Neither exclusion, however, applies to sighted disabled persons.

▮ Plaintiffs charge that this disparate treatment violates the so-called "comparability" requirement of section 1396a(a)(17) of the Medicaid Act,[6] which states in relevant part:

A State plan for medical assistance must—

(17) ... include reasonable standards (which shall be comparable for all groups ...) for determining eligibility for and the extent of medical assistance under the plan....

42 U.S.C. § 1396a(a)(17) (1995 Supp.). Plaintiffs rely heavily on *State of Mississippi v. Sullivan*, 951 F.2d 80, 84 (5th Cir.1992), where the Fifth Circuit held that the comparability requirement was "meant to ensure comparability *between* groups."[7] Thus, "[w]hatever level of financial eligibility the state determines to be that which is applicable for the eligibility of the needy aged, for example, shall be comparable to that which the State sets to determine the eligibility for the needy blind and disabled." *Id.* (quoting S.Rep. No. 404, 89th Cong., 1st Sess. 77–78, reprinted in 1965 U.S.C.C.A.N. 1943, 2018).

Unlike this case, however, *Sullivan* did not involve a section 209(b) state. As noted above, section 209(b) is an exception to the otherwise applicable rule that a state must provide Medicaid assistance to those entitled to receive SSI benefits. *Roloff v. Sullivan*,

975 F.2d 333, 340 (7th Cir.1992). States that choose the 209(b) option "may use more restrictive nonfinancial eligibility conditions, financial eligibility conditions, or both." 58 Fed.Reg. 4904, 4910 (Jan. 19, 1993). Thus, section 209(b) is properly understood "as a means whereby states can restrict medicaid coverage." *Roloff*, 975 F.2d at 340 (citations omitted).

By its express terms, section 209(b) applies "[n]otwithstanding any other provision of" Title XIX:

Notwithstanding any other provision of this subchapter ... no State ... shall be required to provide medical assistance to any aged, blind, or disabled individual ... for any month unless such State would ... have been[ ] required to provide medical assistance to such individual ... on January 1, 1972....

42 U.S.C. § 1396a(f). Since its enactment, § 209(b) has been amended several times, often to add explicit exceptions to its coverage. *See Mowbray v. Kozlowski*, 914 F.2d 593, 599–600 (4th Cir.1990). Despite these limitations, however, section 209(b) continues to have general applicability: "when Congress intended to limit the scope of § 209(b), it did so plainly in § 209(b) itself." *Id.*

In this case, it is undisputed that the comparability requirement of § 1396a(a)(17) is not explicitly listed as an exception to the otherwise general applicability of § 209(b). Nor are Indiana's income and resource standards for Medicaid eligibility more restrictive than its January 1, 1972, standards; in 1972, at the time that section 209(b) froze the eligibility limits that a state could place on its Medicaid programs, Indiana had in place a State PASS program for blind persons, but not one for those otherwise disabled. Moreover, § 209(b)'s interpretive regulations make clear that 209(b) states may apply different standards to different groups. As stated in the Code of Federal Regulations:

The [state Medicaid] agency may apply more restrictive requirements only to the aged, to the blind, to the disabled, or to

---

6. *See generally, Schweiker v. Hogan*, 457 U.S. 569, 573 n. 6, 102 S.Ct. 2597, 2601–02 n. 6, 73 L.Ed.2d 227 (1982); *DeJesus v. Perales*, 770 F.2d 316, 323–324 (2d Cir.1985).

7. In *Sullivan* the court explained that

[a]ged persons form one "group"; blind persons form a second; disabled persons form still a third; etc.

*Sullivan*, 951 F.2d at 83.

any combination of these groups. For example, the agency may apply more restrictive requirements to the aged and disabled under this provision and provide Medicaid to all blind individuals who are SSI recipients.

42 C.F.R. § 435.121(c) (1994). Thus, because Indiana is a § 209(b) state, because the comparability requirement of 1396a(a)(17) is not specifically exempted from 209(b) and because Indiana's eligibility criteria have not become more restrictive since 1972, the State has not violated the Medicaid Act. *See also Dandridge v. Coler,* 1984 WL 48819, * 5 (N.D.Ill. Oct. 11, 1984) ("Our conclusion recognizes an exception for § 209(b) states to the 'identical standard' and 'comparability' requirements of other portions of the Act"), *Cf. Synesael v. Ling,* 691 F.2d 1213, 1215–16 (7th Cir.1982) (Indiana's more restrictive "five-year reach-back provision" does not violate Boren–Long Amendment because "Indiana's special status as a 209(b) state, coupled with the fact that its five-year reach-back provision dates back to" 1972 makes the regulation valid); *Mowbray,* 914 F.2d at 599–601 (requirements of § 1396a(r)(2) must be harmonized with § 209(b)).

In response, Plaintiffs make three arguments. First, Plaintiffs point to cases where courts have analyzed the validity of certain state or federal rules in light of various portions of § 1396a(a)(17). Because none of these cases were decided on § 209(b) grounds, Plaintiffs claim that these courts have impliedly held that § 1396a(a)(17) trumps § 209(b). *See, e.g., Schweiker,* 453 U.S. 34, 101 S.Ct. 2633 (deeming regulations promulgated by secretary of Health and Human Services did not violate § 1396a(a)(17)(D) in § 209(b) states); *Roloff v. Sullivan,* 975 F.2d at 342 (§ 1396a(a)(17)'s "reasonable standards" requirement not violated by Indiana's "first day of month" rule).

An implied holding, however, is not the same as an explicit one. None of the cases cited by Plaintiff expressly examines the preemptory effect, if any, of § 209(b) in the

context of a § 1396a(a)(17) challenge to existing state eligibility criteria.[8] Moreover, where—as here—litigants have attempted to *expand* a § 209(b) state's Medicaid obligations to conform to other federal requirements, the cases have uniformly held that

> [Congress] enacted § 209(b) to ensure that States that do not wish to do so would not have to enlarge Medicaid eligibility to SSI levels. States using the § 209(b) option thus were told they could retain virtually all of the Medicaid eligibility limitations . . . that were allowed under the original act.

*Schweiker,* 453 U.S. at 46–47, 101 S.Ct. at 2642 (footnote omitted).[9] Thus, the Court does not find this contention persuasive.

Second, Plaintiffs maintain that § 209(b) has force only when a recipient claims that her eligibility for SSI makes her concomitantly eligible for Medicaid, thus implicating § 209(b) only in disputes involving § 1396a(a)(10)(A)(i)(II). Because the claims at issue here "have no bearing on the issue of automatic SSI eligibility for Medicaid," Plaintiffs claim that § 209(b) is inapplicable.

Initially, we disagree with this contention that "the challenged policies do not concern eligibility criteria, they concern how income and resources are potentially counted." (Plaintiffs' Memorandum in Opposition to Defendants' Motion, at 11). This is a distinction without a difference. Although the challenged policies concern how income and resources are potentially counted, the reason income and resources must be counted is to determine *Medicaid eligibility.*

More fundamentally, to limit the scope of 209(b) to § 1396a(10)(A)(i)(II) disputes undermines 209(b)'s wider role as "the method by which conflicts between relatively restrictive pre-SSI state criteria and subsequently enacted federal standards should be resolved." *Mowbray,* 914 F.2d at 599. At the core of the 209(b) option is a delegation of power to the states to create and apply their own income and resource eligibility criteria

---

8. Indeed, in four of the five cases cited by Plaintiffs, the court avoided this difficult statutory construction issue altogether by determining that § 1396a(a)(17) was not violated.

9. In a footnote, the Court qualified its "virtually all" language by stating that "States exercising the § 209(b) option were obliged only to amend their Medicaid plans to include a 'spend-down' provision." *Id.* at 47 n. 16, 101 S.Ct. at 2642 n. 16.

"to the aged, to the blind, to the disabled, or to any combination of these groups." 42 C.F.R. § 435.121(c). Thus, whether to exempt income earned pursuant to a federal PASS for a certain group like the disabled, or whether to exempt it from countable income at all, falls squarely within "the historical prerogatives of the 209(b) states" to limit Medicaid assistance to people who would have been eligible for benefits under the state's 1972 plan. *Synesael v. Ling,* 691 F.2d 1213, 1215 (7th Cir.1982).

Finally, Plaintiffs argue that although § 209(b) allows states to use more restrictive standards than those under the SSI program, "the provision can not be viewed as an all-purpose 'grandfathering' clause which effectively legitimizes any and every provision appearing in the state plan in 1972." (Plaintiffs' Memorandum in Opposition to Defendant's Motion, at 3), *quoting Norman v. St. Clair,* 610 F.2d 1228, 1235 (5th Cir.1980). Thus, if Indiana's disparate treatment of blind and sighted PASS participants violated 1396a(a)(17) in 1972, before the enactment of § 209(b), "it cannot now be made acceptable simply because of § 209(b)." *Id.*

At best, however, this argument simply assumes its conclusion. If the validity of a state's regulations is to be measured against pre–209(b) federal requirements, then courts must implicitly assume that the enactment of § 209(b) did not modify or amend those federal requirements. In other words, Plaintiffs essentially ask this Court to act as if § 209(b) never happened. As much as we would sometimes like to avoid the difficult process of reconciling seemingly contradictory statutory provisions, the Court is unconvinced that ignoring the enactment of 209(b) is the proper method for doing so here.

█ In sum, both the plain language of the statute and the caselaw make clear that § 209(b) has general applicability. Thus, be-

cause the comparability requirement of 1396a(a)(17) is not specifically exempted, we find that Indiana's treatment of PASS income and resources for sighted Medicaid participants does not violate the Medicaid Act. This is not to say, however, that 209(b) states are immune from all federal guidelines regarding Medicaid: "when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974). Yet where, as here, parties seek to widen a state's Medicaid obligations [10] by forcing a state to "count PASS monies or income generated from PASS plans in ways [no] different than those provided in federal law," there can be little doubt that a core 209(b) interest is implicated. (Second Amended Complaint, at p. 7).

**B. Indiana's Disparate Treatment of Blind and Sighted PASS Participants Does Not Violate the Rehabilitation or Americans with Disabilities Acts.**

█ Having found that Indiana's regulations do not violate the Medicaid Act, we must now consider whether they violate another federal statute, the Rehabilitation Act of 1973. Section 504 of that Act provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794.[11]

█ When a state participates in the federal Medicaid program, § 504 reserves to the state "substantial discretion to choose the proper mix of amount, scope and duration limitations on [Medicaid] coverage." *Alexander v. Choate,* 469 U.S. 287, 303, 105 S.Ct. 712, 721, 83 L.Ed.2d 661 (1985). Thus, the Act does not require that all handicapped persons be provided with identical benefits.

10. Preliminary estimates, which have been unrebutted, suggest that the relief requested by Plaintiff would entail not only a significant change in the Indiana eligibility rules, but also a large expenditure of state funds (nearly $2 million over the next two years). (Dep. of Cindy Stamper, pp. 23–24).

11. Section 504 is limited to programs or activities receiving federal financial assistance. Title II of the ADA, under which Plaintiffs also seek relief, simply broadens the protection afforded to disabled individuals by prohibiting discriminatory treatment from all public entities, without regard to the receipt of federal financial assistance. *Wolford by Mackey v. Lewis,* 860 F.Supp. 1123, 1134 (S.D.W.Va.1994).

*P.C. v. McLaughlin,* 913 F.2d 1033, 1041 (2d Cir.1990). Rather, a participating state may define the Medicaid benefits it will provide, so long as otherwise qualified disabled individuals are afforded meaningful and equal access to the benefits offered. *Choate,* 469 U.S. at 299–301, 105 S.Ct. at 719–20; *Wolford by Mackey v. Lewis,* 860 F.Supp. 1123, 1135 (S.D.W.Va.1994); *see also Lloyd v. Housing Authority of Kirksville,* 58 F.3d 398, 399 (8th Cir.1995).

In *Choate,* the Supreme Court made clear that "to assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made." *Id.* at 301, 105 S.Ct. at 720 (footnote omitted). An accommodation is unreasonable if it either imposes "undue financial and administrative burdens," *Southeastern Community College v. Davis,* 442 U.S. 397, 412, 99 S.Ct. 2361, 2370, 60 L.Ed.2d 980 (1979), or requires a "fundamental alteration in the nature of a program." *Id.* at 410, 99 S.Ct. at 2369.

Here, Plaintiffs argue that the State violates § 504 by excluding PASS-related income and resources for purposes of calculating eligibility for blind recipients, but not for sighted ones. Plaintiffs, however, have failed to provide any evidence from which a reasonable trier of fact could conclude that Indiana's disparate treatment of SSI-approved PASS plans denies the sighted meaningful access to the Medicaid program. By contrast, the State cites various provisions of Indiana and federal law that guarantee access to Medicaid for all aged, blind and disabled individuals who meet certain financial and non-financial conditions. *See* 405 IAC 2–3–15; 42 C.F.R. § 435.121 (total equity value of all applicant's nonexempt personal property cannot exceed $1500 for any month, regardless of disability type). Indeed, all recipients are guaranteed comparable medical assistance, whether blind or otherwise. *See* 42 U.S.C. § 1396a(a)(17). Indiana is also required to offset incurred medical expenses from income for all recipients. Thus, Indiana guarantees access to Medicaid to all applicants and, with the exception of its treatment of PASS-related income, it subjects all applicants to similar eligibility criteria and provides them with comparable medical assistance.

Moreover, as discussed above, Indiana must treat a blind PASS participant's income differently than a sighted one because Indiana selected the § 209(b) option, thus freezing in place historical eligibility distinctions already existing among "the aged ... the blind ... the disabled or ... any combination of these groups." 42 C.F.R. § 435.121(c); *see also* § 435.121(d) and (e). Significantly, section 504 of the Rehabilitation Act does not manifest a clear intent to repeal or amend section 209(b). Indeed, "nothing in the pre- or post–1973 legislative discussion of § 504 suggests that Congress desired to make major inroads on the States' longstanding discretion to choose the proper mix of amount, scope, and duration limitations on services covered by state Medicaid." *Choate,* 469 U.S. at 307, 105 S.Ct. at 723. Thus, before the Court could find that the general anti-discrimination principles embodied in § 504 were intended to limit a State's longstanding discretion to set otherwise reasonable Medicaid coverage rules, that intent would have to be indicated with greater specificity. *See Choate,* 469 U.S. at 307 n. 32, 105 S.Ct. at 723 n. 32; *Traynor v. Turnage,* 485 U.S. 535, 547–48, 108 S.Ct. 1372, 1381, 99 L.Ed.2d 618 (1988) ("It is a basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum"); *Knutzen v. Eben Ezer Lutheran Housing Center,* 815 F.2d 1343, 1353 (10th Cir.1987) (general civil rights statute like § 504 does not "revoke or repeal a much more specific statute with an articulated program"); *Duquette by and through Duquette v. Dupuis,* 582 F.Supp. 1365 (D.N.H.1984).

In sum, Plaintiffs essentially argue that because Indiana excludes PASS-related income and resources for blind recipients, it must now do the same for non-blind recipients. However, "[t]here is nothing in the Rehabilitation Act that requires that any benefit extended to one category of handicapped persons also be extended to all other categories of handicapped persons," *Traynor,* 485 U.S. at 549, 108 S.Ct. at 1382. Thus, because Plaintiffs have tendered no evidence to suggest that sighted applicants are denied

meaningful access to Medicaid, and because § 504 does not trump the intricate federal/state balance embodied in § 209(b), we find that summary judgment in favor of the Defendants is warranted on this claim.

### C. Indiana Medicaid Plan Does Not Violate the Equal Protection Clause.

 Finally, Plaintiffs contend that Indiana's disparate treatment of blind and sighted PASS participants violates the Equal Protection Clause of the United States Constitution. It is well established that for purposes of the equal protection analysis, the disabled do not constitute a suspect class. *Welsh v. City of Tulsa*, 977 F.2d 1415, 1420 (10th Cir.1992). Nor is there a fundamental constitutional right to receive Medicaid benefits. "[W]hen reviewing class distinctions drawn in social legislation not pertaining to a fundamental right or a suspect class, our review is [therefore] limited to determining whether the statute is rationally related to legitimate legislative goals." *Hassan v. Wright*, 45 F.3d 1063, 1068 (7th Cir.1995) (internal quotation marks omitted).

In *Spragens v. Shalala*, 36 F.3d 947 (10th Cir.1994), the Tenth Circuit considered whether Social Security regulations that distinguished between blind and non-blind disabled recipients violated the equal protection. The regulations at issue allowed blind persons to earn up to $650 per month and still maintain eligibility for Social Security benefits. Persons who are otherwise disabled, however, could only earn $300 per month before he or she became ineligible for benefits. After noting that the rational basis test was the proper standard for review, the court held that the distinction between blind persons and persons otherwise disabled was not irrational. Concluded the court:

> In our view, it is reasonable to conclude that blind persons are in a less favorable position than others who, though suffering from disabilities, nonetheless still have their eyesight.

*Id.* at 951; *accord Varner v. Shalala*, 897 F.Supp. 1144 (C.D.Ill.1995) (upholding the validity of same regulations challenged in *Spragens* ).

We find the reasoning of *Spragens* and *Varner* equally applicable to this case. Indiana "could rationally determine that the hardships facing the visually impaired are more substantial than those facing persons otherwise disabled." *Varner*, 897 F.Supp. at 1147. At the very least, "protecting the fisc provides a rational basis for [Indiana's] line drawing in this instance." *Hassan*, 45 F.3d at 1069; *see also Cherry by Cherry v. Sullivan*, 30 F.3d 73, 75 (7th Cir.1994) ("Indiana, as do other states, has a legitimate interest in controlling Medicaid expenditures and seeing that Medicaid dollars are allotted to only the truly needy recipients"). Accordingly, we find that Plaintiffs' equal protection rights are not violated by Indiana's regulations.

### III. CONCLUSION.

The Court takes little pleasure in validating a scheme that rewards Medicaid recipients who attempt to achieve a limited measure of self-sufficiency by terminating their medical assistance. We have nothing but admiration for persons like Mr. Ravin and Ms. Vaughn who, in the face of overwhelming obstacles, strive for economic self-sufficiency and independence. However, only legislative initiatives, not this Court's admiration, can modify and perfect the delicate balance of federal and state interests embodied in § 209(b).

Thus, for the reasons stated above, we DENY the plaintiff class' motion for summary judgment and GRANT Defendants' motion for summary judgment.

It is so ORDERED.