317 F.Supp.2d 1233 (2004)
Stuart SANDERS, by and through his next friend and mother, Jeannine RAYL, Plaintiff,
v.
KANSAS DEPARTMENT OF SOCIAL AND REHABILITATION SERVICES, Janet Schalansky, in her official capacity, Laura Howard, in her official capacity, and Robert Day, in his official capacity., Defendants.
No. 03-4075-SAC.
United States District Court, D. Kansas.
April 29, 2004.
*1234 *1235 *1236 *1237 James A. Passamano, Sufian & Passamano LLP, Houston, TX, Scott A. Letts, *1238 Kansas Advocacy & Protective Services, Inc., Topeka, KS, for Plaintiff.
Danny J. Baumgartner, Carl W. Ossmann, Topeka, KS, for Defendant.

MEMORANDUM AND ORDER
CROW, District Senior Judge.
This case comes before the court on defendants' motion to dismiss the case for lack of standing, lack of subject matter jurisdiction, and failure to state a claim upon which relief can be granted.
Plaintiff is an adult male who has chronic progressive multiple sclerosis, quadriplegia, seizure disorder and pulmonary dysfunction, in addition to other physical conditions. Dk. 14, ¶ 10. This case had its genesis when the Kansas Department of Social and Rehabilitation Services ("SRS"), a Medicaid agency, denied plaintiff's request for a "Vest Airway Clearance System" ("the Vest").
Thereafter, plaintiff brought this suit, naming as defendants not only SRS, but also the following individuals in their official capacities: Janet Schalansky, the Secretary of SRS; Laura Howard, the Assistant Secretary of the Health Care Policy Division of SRS; and Robert Day, the Director of Medical Policy and Medicaid Director of Health Care Policy Division of SRS. The case alleges violations of the ADA, the Rehabilitation Act, the Medicaid Act, and 42 U.S.C. § 1983.

I. BACKGROUND
Plaintiff participates in the Kansas Medicaid Program, and in the home and community-based waiver services. See 42 U.S.C. § 1396n. Programs approved under this subsection are waived from many Medicaid strictures, id. § 1396n(c)(3), including that medical assistance be made available to all individuals equally, see id. § 1396a(a)(10)(B). Plaintiff's physician requested pre-authorization for Medicaid to cover the Vest, which the court understands to be a piece of medical equipment resembling a clothing vest which transmits rapid pulsations designed to mobilize secretions in one's chest. SRS, a Medicaid agency, denied the request. The basis for SRS's denial is disputed. Plaintiff alleges it was because he is not institutionalized, does not have cystic fibrosis, and is not under 21 years of age. Defendants allege it was because the Vest was not shown to be medically necessary.
Plaintiff unsuccessfully requested reconsideration of the denial, then appealed the denial to the state administrative Hearing Officer, who affirmed. Plaintiff pursued a further appeal to the Kansas State Appeals Committee, which also affirmed the agency decision to deny payment for the Vest. See K.S.A. § 77-527(a)(2)(B); § 75-3306; K.A.R. 30-7-78. Plaintiff did not seek review in the district court of these administrative decisions, see K.S.A. § 77-601, choosing instead to file this case in federal court.
Plaintiff alleges that defendants violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., § 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-796, the equal protection and due process clauses of the United States Constitution, and various provisions of the Medicaid Act alleged to be actionable via 42 U.S.C. § 1983.

II. MOTION FOR ORAL ARGUMENT
Plaintiff has moved the court to grant oral argument on defendants' motions to dismiss, alleging that the host of immunity issues "require subtle distinctions that are more easily addressed in oral hearing." Dk. 26, p. 2. The court does not believe that oral argument would be of material assistance in deciding these motions, so denies plaintiff's motion for oral argument.

*1239 III. NEXT FRIEND STANDING
As a threshold matter, the court must determine whether plaintiff's mother may assert the claims on behalf of her adult son as his next friend, as she attempts to do.
Federal Rule of Civil Procedure 17(c) provides that "an infant or incompetent person who does not have a duly appointed representative may sue by next friend or by a guardian ad litem...." The parties agree that Stuart Sanders, whose amended complaint alleges that he is 51 years old, is not an infant. The sole issue is therefore whether he is an "incompetent person" within the meaning of that term in this rule.
It is uncontested that Stuart Sanders has not been adjudicated incompetent by a state court. Nonetheless, plaintiff contends that he is in fact incompetent, in stating:
Because of communication and physical impairments caused by his medical conditions, Stuart Sanders cannot independently represent his interests in this suit against the defendants. For this reason, this action is brought by Stuart Sanders through his next friend and mother, Jeannine Rayl. Stuart Sanders resides with Jeannine Rayl; she is familiar with his medical needs; and she is familiar with the factual issues involved in this suit.
Dk. 14, p. 3, ¶ 5. No other relevant facts are included in the record.
Defendants Schalansky, Howard and Day assert that Jeannine Rayl cannot serve as "next friend" to her adult son because under Rule 17(c), an adult must be adjudicated incompetent by the relevant state court before a "next friend" may bring suit on his behalf.
The term "incompetent person" in Rule 17(c) refers to "a person without the capacity to litigate." Thomas v. Humfield, 916 F.2d 1032, 1035 (5th Cir.1990), aff'd, 32 F.3d 566 (5th Cir.1994), cert. denied, 513 U.S. 1167, 115 S.Ct. 1138, 130 L.Ed.2d 1098 (1995). Next friends appear in court on behalf of persons who are unable to seek relief themselves, usually because of mental incompetence. Whitmore v. Arkansas, 495 U.S. 149, 162, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990).
The court believes that its power to appoint under Rule 17(c) should not be used to circumvent the mandate in Rule 17(b) to observe state law. See Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources, 19 F.Supp.2d 567, 575 (N.D.W.Va.1998) (directing plaintiffs to substitute the real parties in interest in lieu of the inappropriately named next friends); Wolfe by Hedges v. Bias, 601 F.Supp. 426, 427-28 (S.D.W.Va.1984). The court nonetheless recognizes that it is (not bound by state procedures for determining competency, and that there may be an occasion which compels a federal court to make a finding of incompetence, independent of a state court). See e.g., Thomas v. Humfield, 916 F.2d 1032, 1035 (5th Cir.1990); 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1570, at 503 (2d ed.1990).
The court agrees that defendants' approach reflects the better practice because it avoids the risk of inconsistent federal and state court adjudications, assures the parties of the application of well-established and uniform procedural standards, and lends certainty to the process by which incompetence may be found. The court finds that plaintiff fails to satisfy the requirements of Rule 17(c) for suit by a next friend because the record before the court fails to show incompetence and plaintiff has never been adjudicated incompetent. Cf, Lichtenhahn v. Bureau of Land Management, 72 F.3d 138, 1995 WL 749704, *1 (10th Cir. Dec.19, 1995) (Table). *1240 The court would ordinarily direct the plaintiff to substitute the real party in interest in lieu of the inappropriately named next friend, but for the reasons set forth below, such an order would be futile.

IV. JURISDICTIONAL ISSUES
The court next examines the host of jurisdictional issues raised by the parties. These include the Rooker-Feldman doctrine, the Younger abstention doctrine, failure to exhaust administrative remedies, and Eleventh Amendment immunity.

Rooker-Feldman doctrine
The court initially examines and rejects defendants' claim that plaintiff's case is barred by the Rooker-Feldman doctrine. That doctrine generally precludes federal court review of state court judgments.
The Tenth Circuit has recently reaffirmed that the Rooker-Feldman doctrine does not apply to decisions of administrative agencies. "The Rooker-Feldman doctrine applies only to judicial proceedings. See D.C. Court of Appeals v. Feldman, 460 U.S. 462, 476, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)." Woodard v. Jefferson County, 18 Fed.Appx. 706, 717, 2001 WL 997925, *10 (10th Cir. Aug.31, 2001). Because it is undisputed that no state court judgment has been reached on the issues presented to this court, this doctrine is inapplicable.

Younger abstention
Defendants additionally seek application of the Younger abstention doctrine.
The Younger doctrine, as developed, requires abstention when federal proceedings would (1) interfere with an ongoing state judicial proceeding (2) that implicates important state interests and (3) that affords an adequate opportunity to raise the federal claims. (citations omitted). A case warrants Younger abstention only if each of these three criteria are satisfied.
J.B. ex rel. Hart v. Valdez, 186 F.3d 1280, 1291 (10th Cir.1999). The court finds this doctrine inapplicable because there is no ongoing state judicial proceeding with which any proceedings in this court could potentially interfere.

Exhaustion of Administrative Remedies
Defendants next contend that this suit is barred because plaintiff failed to seek judicial review in state court of SRS's final administrative action. See Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. § 77-601 et seq.[1] Defendants have not shown, however, that each cause of action asserted by plaintiff falls within the jurisdiction of the state agency or that judicial review pursuant to the KJRA is the exclusive remedy for the violations alleged in this case.
Defendants additionally contend that plaintiff's failure to initially request the Vest from Medicare instead of from Medicaid bars this suit. Plaintiff counters by alleging that he did request the Vest from Medicare. This factual dispute is not properly decided on a motion to dismiss, and thus provides no basis for dismissal.

Eleventh Amendment immunity
Defendants next claim the protection of Eleventh Amendment immunity from all of plaintiff's claims. This issue challenges the court's subject matter jurisdiction, and is generally considered as a Rule 12(b)(1) motion to dismiss. Burden of proof
Defendants contend that plaintiff bears the burden to show defendants lack Eleventh Amendment immunity, as part of *1241 plaintiff's burden to establish the propriety of federal court jurisdiction. The court disagrees, and joins those courts holding that the defendant asserting Eleventh Amendment immunity bears the burden of proof on that issue. See Holt ex rel. Holt v. Wesley Medical Center, LLC, 2002 WL 1067677 (D.Kan. Mar 27, 2002); Teichgraeber v. Memorial Union Corp. of Emporia State University, 946 F.Supp. 900, 903 (D.Kan.1996) (finding that Eleventh Amendment immunity should be treated as an affirmative defense and must be proved by the party asserting it).

General Rule
The Eleventh Amendment grants the states absolute immunity from suits brought by individuals in federal court. Edelman v. Jordan, 415 U.S. 651, 662-63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). It guarantees that "nonconsenting States may not be sued by private individuals in federal court." Bd. of Trustees of Uni. of Ala. v. Garrett, 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). When the state itself is a named defendant, the Eleventh Amendment bar operates regardless of the legal or equitable nature of the relief sought. Hensel v. Office of Chief Administrative Hearing Officer, 38 F.3d 505, 509 (10th Cir.1994). The same is true for suits against a state agency, regardless of the form of relief sought. ANR Pipeline Co. v. Lafaver, 150 F.3d 1178, 1187 (10th Cir.1998), cert. denied, 525 U.S. 1122, 119 S.Ct. 904, 142 L.Ed.2d 902 (1999). Thus the Eleventh Amendment doctrine of sovereign immunity bars actions for damages against a State, its agencies and its officials acting in their official capacities. See Kentucky v. Graham, 473 U.S. 159, 165-167, n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); Ambus v. Granite Bd. of Educ., 995 F.2d 992, 994 (10th Cir.1993).

Exceptions
There are, of course, exceptions to the general rule of immunity, as the Tenth Circuit has recently reviewed, in stating:
Although States are generally immune from suit brought by private individuals, there are three well-established exceptions to the bar. First, the States may consent to suit, waiving immunity. Second, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. Finally, under the doctrine announced in Ex Parte Young, an individual seeking only prospective injunctive relief for ongoing violations of federal law may bring suit against state officials in federal court.
Chaffin v. Kansas State Fair Board, 348 F.3d 850, 866 (10th Cir.2003) (internal citations and quotations omitted). The court thus examines whether any of these exceptions applies.

No Waiver or Abrogation of Section 1983 claims
Although 42 U.S.C. § 1983 immunity can be waived, the State of Kansas has not done so in this case, nor has its immunity been abrogated for § 1983 suits. See Bock Associates v. Chronister, 951 F.Supp. 969 (D.Kan.1996) (holding that Eleventh Amendment barred federal district court from hearing § 1983 suit against Secretary of Kansas SRS). See generally Elephant Butte Irr. Dist. v. Department of Interior, 160 F.3d 602, 607 (10th Cir.1998), cert. denied, 526 U.S. 1019, 119 S.Ct. 1255, 143 L.Ed.2d 352 (1999).

No Waiver or Abrogation of ADA claims
The ADA's attempt to waive sovereign immunity has been rejected. See Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 374, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) (invalidating waiver of states' *1242 immunity under Title I of ADA). Nor has the state's immunity been abrogated for suits under Title II of the ADA. Thompson v. Colorado, 278 F.3d 1020, 1034 (10th Cir.2001) (finding Title II of ADA "is not a valid abrogation of the states' Eleventh Amendment immunity"), cert. denied, 535 U.S. 1077, 122 S.Ct. 1960, 152 L.Ed.2d 1021 (2002); Buck v. Industrial Com'n of Utah, 51 Fed.Appx. 832, 835, 2002 WL 31516609, *2 (10th Cir. Nov.13, 2002).

Waiver of Rehabilitation Act claims
Congress has manifested a clear intent to condition participation in the programs funded under the Rehabilitation Act on a State's consent to waive its constitutional immunity. See 42 U.S.C. § 2000d-7(a)(1) ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal Court for a violation of section 504 of the Rehabilitation Act ..."). The Tenth Circuit has recently held that "by accepting federal financial assistance as specified in 42 U.S.C. § 2000d-7, states and state entities waive sovereign immunity from suit." Robinson v. Kansas, 295 F.3d 1183, 1190 (10th Cir.2002) (finding Kansas had so waived).
Defendants allege that Robinson was decided in error because Congress did not have the power to abrogate a state's sovereign immunity through a power granted by Article I of the United States Constitution, such as the spending clause, citing Seminole Tribe v. Florida, 517 U.S. 44, 73, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Robinson, however, was decided on the basis of a state's waiver of sovereign immunity, rather than on the basis of Congress's abrogation thereof, thus the court finds defendants' criticism misplaced.
The court notes, however, that the waiver applies solely to § 504 violations, and, contrary to plaintiff's assertions, does not waive immunity as to any other claims in the suit.[2]
See Lane v. Pena, 518 U.S. 187, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996). Additionally, although the statute specifies that legal and equitable remedies are available in such a suit "to the same extent as ... in the suit against any public or private entity other than a State," such language does not reveal congressional intent to equalize remedies available against all defendants for Rehabilitation Act violations, so that states, like private entities, are subject to monetary damages for such violations. See Lane, 518 U.S. at 197-98, 116 S.Ct. 2092.

Ex parte Young exception to Eleventh Amendment immunity
Plaintiff additionally invokes the Ex parte Young exception to Eleventh Amendment immunity. See Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).
Under this doctrine, "the Eleventh Amendment generally does not bar a suit against a state official in federal court which seeks only prospective equitable relief for violations of federal law, even if the state is immune." Elephant Butte Irrigation Dist. of N.M. v. Department of the Interior, 160 F.3d 602, 607 (10th Cir.), cert. denied, 526 U.S. 1019, 119 S.Ct. 1255, 143 L.Ed.2d 352 (1999). See Kentucky v. Graham, 473 U.S. 159, 167 n. 14, 105 S.Ct. *1243 3099, 87 L.Ed.2d 114 (1985). The reasoning behind the Ex Parte Young exception is that if an official has performed his duties in a way that contravenes either the Constitution or a federal law, he does so outside the cloak of state authority, thus a suit against him does not impact the State in its sovereign or governmental capacity. Chaffin, 348 F.3d at 866.
The Ex parte Young doctrine is narrow, applies only to prospective relief, and "does not permit judgments against state officers declaring that they violated federal law in the past." Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993). See Roe No. 2 v. Ogden, 253 F.3d 1225, 1233 (10th Cir.2001); Clark v. Stovall, 158 F.Supp.2d 1215 (D.Kan.2001), aff'd 2002 WL 798259 (10th Cir. Apr.30, 2002) (Table), cert. denied, 537 U.S. 948, 123 S.Ct. 412, 154 L.Ed.2d 292 (2002).

Four-part test
The Tenth Circuit follows a four-part test to determine whether the Ex Parte Young doctrine should be applied:
First, we determine whether the action is against state officials or the state itself. Second, we look at whether the alleged conduct of the state officials constitutes a violation of federal law. Third, we assess whether the relief sought is permissible prospective relief or analogous to a retroactive award of damages impacting the state treasury. Finally, we analyze whether the suit rises to the level of implicating "special sovereignty interests."
Chaffin, 348 F.3d at 866, quoting Robinson v. Kansas, 295 F.3d 1183, 1191 (10th Cir.2002). See ANR Pipeline Co. v. Lafaver, 150 F.3d 1178, 1187-90 (10th Cir.1998) (analyzing Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) and Seminole Tribe v. Florida, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)). The court finds it necessary to address only two related factors: the nature of the alleged violation, and the nature of the relief sought.
This doctrine requires that there "be an ongoing violation of federal law" and that it apply "only to prospective relief" and not "to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past." Buchwald v. University of New Mexico School of Medicine, 159 F.3d 487, 495 (10th Cir.1998). The requirement that the relief sought be permissible prospective relief not analogous to a retroactive award of damages impacting the state treasury is "not a game in semantics"; rather, the "overriding question is ... whether the relief will remedy future rather than past wrongs." Chaffin, 348 F.3d at 867, quoting Elephant Butte, 160 F.3d at 611.
Plaintiff's amended complaint expressly seeks damages and retrospective relief against SRS, see e.g., Dk. 14, ¶¶ 31, 33, 44, 45, 47 and 50, but is careful to state only prospective equitable and declaratory relief against the individual defendants in their official capacities, see e.g., ¶ ¶ 28, 43, 45. It states:
Sanders seeks to enforce the Medicaid Act through prospective equitable and declaratory relief against Janet Schalansky, Laura Howard, and Robert Day, in their official capacities for their ongoing violation of federal law.
Dk. 14, para. 28.
This and similar recitations in the amended complaint include the proper terminology, yet lack substance. The court has searched in vain for some manner in which any alleged violation of law by defendants could be deemed to be ongoing. It is difficult to view this suit as one to remedy any future wrongs, and it does not appear that the circumstances which *1244 caused SRS to deny plaintiff's request will reoccur with any level of frequency, if at all. Compare Lewis v. New Mexico Dept. of Health, 94 F.Supp.2d 1217 (D.N.M.2000) (finding plaintiffs sought to remedy future wrongs by seeking to enjoin state officials from further delay in the provision of waiver services).
Although the effects of defendants' acts as they impact the plaintiff may be continuing, a continuing effect of a past violation is not sufficient to warrant prospective injunctive relief. See V-1 Oil Co. v. Utah State Dept. of Public Safety, 131 F.3d 1415, 1422 (10th Cir.1997) (Eleventh Amendment bars claims for "retroactive monetary reimbursement for licensure and certification fees" and for declaratory judgment that state officials had violated federal law in the past). The allegations in the complaint provide no indication that prospective injunctive relief would ameliorate the alleged violations, which have already occurred. See Calderon v. Kansas Dep't of Soc. and Rehab. Servs., 181 F.3d 1180, 1184-85 (10th Cir.1999) (finding Ex Parte Young inapplicable and dismissing claims under 11th Amendment where complaint gave no indication that plaintiff might be entitled to injunctive relief for ongoing federal constitutional violations by state officials). The court concludes that plaintiff has failed to state an ongoing federal constitutional violation which prospective injunctive relief could remedy.
Therefore, the court finds the Ex parte Young exception to Eleventh Amendment immunity inapplicable to plaintiff's claims brought against the individual defendants in their official capacities. Accordingly, Eleventh Amendment immunity protects the defendants against all claims but plaintiff's § 504 claims, as to which the state has waived its immunity.

V. FAILURE TO STATE A CLAIM

A. § 504 claim
Plaintiff claims that SRS, and not the individual defendants, violated § 504 of the Rehabilitation Act. Defendants contend that plaintiff's action fails to state a claim pursuant to § 504, and thus move for dismissal pursuant to Fed.R.Civ.P. 12(b)(6).

Standards governing motions to dismiss
A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Dismissal should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir.1997) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)), or unless an issue of law is dispositive, Neitzke v. Williams, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir.1993); see Hospice of Metro Denver, Inc. v. Group Health Ins. of Oklahoma, 944 F.2d 752, 753 (10th Cir.1991) ("Dismissal of a case pursuant to Fed.R.Civ.P. 12(b)(6) requires the legal determination that the plaintiff can prove no set of facts in support of his claim to entitle him to relief.") (citations omitted). The Tenth Circuit has observed that the federal rules "`erect a powerful presumption against rejecting pleadings for failure to state a claim.'" Maez v. Mountain States Tel. and Tel., Inc., 54 F.3d 1488, 1496 (10th Cir.1995) (quoting Morgan v. City of Rawlins, 792 F.2d 975, 978 (10th Cir.1986)).
*1245 Although a plaintiff need not precisely state each element of his claims, he must plead minimal factual allegations on those material elements that must be proved. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir.1991). Put another way, "`conclusory allegations without supporting allegations are insufficient to state a claim.'" Erikson v. Pawnee County Bd. of County Com'rs, 263 F.3d 1151, 1154 (10th Cir.2001) (quoting Hall, 935 F.2d at 1110), cert. denied, 535 U.S. 971, 122 S.Ct. 1438, 152 L.Ed.2d 382 (2002). "[A]llegations of conclusions or opinions are not sufficient when no facts are alleged by way of the statement of the claim." Bryan v. Stillwater Board of Realtors, 578 F.2d 1319, 1321 (10th Cir.1977); see Bryson v. City of Edmond, 905 F.2d 1386, 1390 (10th Cir.1990) (district court is not required to accept "footless conclusions of law" in deciding motion to dismiss). "`It is true that the Federal Rules of Civil Procedure do not require a plaintiff to set out in detail the facts upon which a claim is based. Nevertheless, a plaintiff must allege sufficient facts to outline a cause of action, proof of which is essential to recovery.'" Stevens v. Umsted, 131 F.3d 697, 700 (7th Cir.1997) (quoting Ellsworth v. City of Racine, 774 F.2d 182, 184 (7th Cir.1985), cert. denied, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986)).
A court judges the sufficiency of the complaint accepting as true all well-pleaded facts, as distinguished from conclusory allegations, Maher v. Durango Metals, Inc., 144 F.3d 1302, 1304 (10th Cir.1998), and drawing all reasonable inferences from those facts in favor of the plaintiff. Witt v. Roadway Express, 136 F.3d 1424, 1428 (10th Cir.), cert. denied, 525 U.S. 881, 119 S.Ct. 188, 142 L.Ed.2d 154 (1998); see Southern Disposal, Inc. v. Texas Waste Management, 161 F.3d 1259, 1262 (10th Cir.1998) (court "need not accept ... conclusory allegations as true."). It is not the court's function "to weigh potential evidence that the parties might present at trial." Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir.1991). The court construes the allegations in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). These deferential rules, however, do not allow the court to assume that a plaintiff "can prove facts that it has not alleged or that the defendants have violated the ... laws in ways that have not been alleged." Associated General Contractors v. California State Council of Carpenters, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) (footnote omitted). Dismissal is a harsh remedy to be used cautiously so as to promote the liberal rules of pleading while protecting the interests of justice. Cayman Exploration Corp. v. United Gas Pipe Line Co., 873 F.2d 1357, 1359 (10th Cir.1989).

Substance  § 504 claims
Section 504 of this Act provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794. This section generally prohibits discrimination against the disabled by recipients of federal funding, including private organizations. 29 U.S.C. § 794(b)(3).
To make a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must show, among other elements, that he is "otherwise qualified." Schrader v. Fred A. Ray, M.D., P.C. 296 F.3d 968, 971 (10th Cir.2002). See Robinson v. Kansas, 117 F.Supp.2d 1124, 1144 (D.Kan.2000), aff'd, 295 F.3d 1183 (10th Cir.2002), cert. denied, 539 U.S. 926, 123 S.Ct. 2574, 156 L.Ed.2d 603 (2002) (a prima facie case requires a plaintiff to prove: (1) he is handicapped under the Act; (2) he is "otherwise qualified" to participate in the program; *1246 (3) the program receives federal financial assistance; and (4) the program discriminated against him).
"Qualified handicapped person" is defined, for services other than those with respect to employment or education, as: "a handicapped person who meets the essential eligibility requirements for the receipt of such services." 45 C.F.R. § 84.3.(k). See 45 C.F.R. § 84.4(b)(1)(i). This definition applies to alleged discrimination by health, welfare and social services providers toward applicants attempting to obtain such services. Beauford v. Father Flanagan's Boys' Home, 831 F.2d 768, 771-72 (8th Cir.1987), cert. denied, 485 U.S. 938, 108 S.Ct. 1116, 99 L.Ed.2d 277 (1988). See generally, 45 C.F.R. § § 84.51, 84.52. This definition therefore governs the court's analysis in this case.
Plaintiff does not contend that he meets the essential eligibility requirements for the receipt of the service he seeks. Rather, he alleges that the eligibility requirements for receipt of the Vest are erroneous and should be changed by this court. The allegations, taken in the light most favorable to plaintiff, fail to include that he is an "otherwise qualified individual" for purposes of this Act, warranting dismissal. See Alexander v. Choate, 469 U.S. 287, 303, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985) (refusing to allow a claim under section 504 because the Medicaid Act, 42 U.S.C. § 1396a(a)(19), gives the states substantial discretion in defining the allocation of benefits); Frances J. by Murphy v. Bradley, 1992 WL 390875, * 7 (N.D.Ill.1992) (finding plaintiffs failed to state a claim under § 504 where plaintiffs asked the court to "stretch the reach of section 504 to interfere in a state agency's discretionary decisionmaking regarding the disbursement of limited funds," and did not allege that services that were being provided to non-handicapped citizens were being denied to citizens with handicaps.); Duquette By and Through Duquette v. Dupuis, 582 F.Supp. 1365, 1373 (D.N.H.1984) (finding plaintiff failed to state a cognizable claim under § 504 because § 504 does not modify the funding conditions or medical assistance eligibility requirements of the Medicaid Act).
"There is nothing in the Rehabilitation Act that requires that any benefit extended to one category of handicapped persons also be extended to all other categories of handicapped persons." Traynor v. Turnage, 485 U.S. 535, 549, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988). The court defers to the institutional judgment of SRS in determining the appropriate level of benefits to be distributed in relation to the severity of an individual's handicap. See Dempsey v. Ladd, 840 F.2d 638, 640 (9th Cir.1987) ("[t]o determine the scope of the term `otherwise qualified handicapped individual,' courts consider the eligibility requirements of the state program receiving federal funds"); Doe v. New York University, 666 F.2d 761, 776 (2d Cir.1981) (holding that "considerable judicial deference must be paid to the evaluation made by the institution itself"). Because plaintiff does not contend that he meets the essential eligibility requirements for the receipt of the service he seeks, but alleges that the eligibility requirements should be changed, he fails to state a claim under § 504.
The court finds it unnecessary to address other issues relative to plaintiff's § 504 claim, including whether plaintiff has sufficiently alleged that any adverse action by SRS was based upon his disability. Although the court need not reach any other claims in this case, given its ruling on immunity, it nonetheless finds as follows, as an alternative basis for its decision.

B. ADA claim
Plaintiff's ADA claim against the individual defendants in their official capacities *1247 alleges that they are discriminating against him on the basis of his disability because they have refused and continue to refuse:
A) to provide medically necessary medical treatment because of the plaintiff's particular disability and diagnosis;
B) to provide airway clearance services that are sufficient in amount, duration and scope to reasonably achieve their medical purpose because of the plaintiff's particular disability and diagnosis;
C) to provide medically necessary durable medical equipment because of the plaintiff's particular disability and diagnosis and because of his age; and
D) to refrain from reducing the amount of services to Stuart Sanders solely because of his type of disability, illness or condition.
Dk. 14, p. 17.
The terms "medically necessary medical treatment," "airway clearance services," "medically necessary durable medical equipment," and "services," as used above in the amended complaint, are merely various references to the Vest. The essence of plaintiff's disability discrimination claim is that defendants discriminated against him by not providing him with the Vest, based upon the "type" of disability he has.
Section 202 of the ADA prohibits discrimination against the disabled by public entities. It states:
Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.
42 U.S.C. § 12132. Plaintiff's claim under the ADA is identical in controlling aspects to his claim under the Rehabilitation Act. See Nielsen v. Moroni Feed Co., 162 F.3d 604, 608 n. 7 (10th Cir.1998).
Plaintiff must prove that (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. Gohier v. Enright, 186 F.3d 1216, 1219 (10th Cir.1999); Pahulu v. University of Kansas, 897 F.Supp. 1387, 1389 (D.Kan.1995).
Spurlock v. Simmons, 88 F.Supp.2d 1189, 1195 (D.Kan.2000).
This claim fails for the same pleading deficiencies which doomed plaintiff's Rehabilitation Act claim. See generally 42 U.S.C. § 12131(2)(defining qualified individuals" as persons with disabilities who, "with or without reasonable modifications to rules, policies, or practices, ... mee[t] the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."); Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581, 602, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999) (finding the State generally may rely on the reasonable assessments of its own professionals in determining whether an individual meets the essential eligibility requirements).

C. Section 1983 claims
SRS contends that plaintiff's action against it under § 1983 is subject to dismissal because the state is not a "person" for purposes of section 1983.[3]
*1248 See Harris v. Champion, 51 F.3d 901, 905-06 (10th Cir.1995) (explaining that a state or state agency is not a person under § 1983 except to the extent that the plaintiff sues for prospective injunctive relief only). Plaintiff counters that because the state has waived its immunity under the Rehabilitation Act, it is deemed a "person" for purposes of § 1983.
The court agrees with SRS. The state's waiver of its Eleventh Amendment immunity in a § 504 action does not transform it into a "person" under § 1983, because the scope of eleventh amendment immunity and the scope of § 1983 are different issues. Will, 491 U.S. at 64-65, 109 S.Ct. 2304. See Bellamy v. Borders, 727 F.Supp. 247 (D.S.C.1989) (finding a state's waiver of eleventh amendment immunity irrelevant to the issue of whether a state is a person for purposes of § 1983).
"A state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because `official-capacity actions for prospective relief are not treated as actions against the State.'" Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (quoting Kentucky v. Graham, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). Accordingly, the court examines whether plaintiff's claims against the individual defendants in their official capacities, brought pursuant to § 1983, withstand defendant's motion to dismiss.

Medicaid statutes
Plaintiff alleges that the Medicaid statute creates a federal right to particular medical equipment which is enforceable under 42 U.S.C. § 1983 and which defendants violated. Specifically, plaintiff contends that the three official defendants "fail[ed] to provide medically necessary durable medical equipment" in violation of the Medicaid statutes stated below. Defendants counter that the alleged violations of the Medicaid statute cannot be enforced by Medicaid recipients by use of 42 U.S.C. § 1983.
Plaintiff states his reliance upon the following Medicaid statutes as a basis for his cause of action under § 1983:
42 U.S.C. § 1396a(a)(8)-A State plan for medical assistance must 
(8) provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals;
42 U.S.C. § 1396a(a)(17)  A State plan for medical assistance must  (17) ... include reasonable standards ... for determining eligibility for and the extent of medical assistance under the plan which (A) are consistent with the objectives of this subchapter ...
For purposes of convenience, the court shall refer to these as the "reasonable promptness" and the "reasonable standards" provisions, respectively.
The Tenth Circuit has not addressed whether the Medicaid statutes noted above create a federal right to particular medical equipment which is enforceable under 42 U.S.C. § 1983. Although the Tenth Circuit in Lewis found that a procedural due process claim under 42 U.S.C. § 1396a(a)(8) passed the "wholly insubstantial or frivolous" test, the Court did not decide the merits of that claim. See Lewis, 261 F.3d at 977 (noting plaintiff's argument that state officials failed to process their applications for waiver services in the manner required by federal law; *1249 "they do not, quite wisely, argue that the Medicaid statutes create a substantive property interest in waiver services to which they are entitled.")
Other courts have found that the reasonable promptness provision of § 1396a(a)(8) provides a cause of action under § 1983. See Bryson v. Shumway, 308 F.3d 79, 89 (1st Cir.2002)(finding a § 1983 cause of action arising from the "reasonable promptness" provision of 42 U.S.C. § 1396a(a)(8) under the state model waiver plan as approved, because the strictures of the statute "should apply with no less force to opt-in plans such as the waiver program."); Doe v. Chiles, 136 F.3d 709, 714-15, 719 (11th Cir.1998) (upholding a § 1983 cause of action under § 1396a(a)(8) as applied to an optional program).
However, in such cases, the essence of plaintiffs' claims was that state officials had failed to process their applications for waiver services in the timely manner required by federal law. See e.g., Bryson, 308 F.3d 79 (remanding to determine whether the state was "reasonably prompt" in filling empty slots in its Medicaid waiver program for individuals with acquired brain disorders); Doe, 136 F.3d 709 (affirming the district court's order which enjoined officials from failing to provide assistance within a "reasonable" time period, not to exceed 90 days). Plaintiff's claim in this case is that the Medicaid statutes create a substantive property interest in a specific piece of equipment to which he is allegedly entitled. Such a claim is different in kind than the claims asserted in the above cases. The court therefore finds no guidance in the cases noted above.
The court is aware that Section 1983, which prohibits persons who act under color of law from depriving individuals of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States, creates a cause of action for federal statutory as well as constitutional rights, Maine v. Thiboutot, 448 U.S. 1, 4-8, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), including, in some circumstances, violations of the Medicaid Act, Wilder v. Va. Hosp. Ass'n, 496 U.S. 498, 524, 110 S.Ct. 2510, 110 L.Ed.2d 455(1990). Where a right of action has been found, however, is has generally been based upon the three-part test in Blessing v. Freestone, 520 U.S. 329, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997), which provides:
First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory rather than precatory terms.
520 U.S. at 340-41, 117 S.Ct. 1353 (citations omitted).
The Supreme Court in Gonzaga University v. Doe, 536 U.S. 273, 282, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002), rejected the notion that Blessing"permit[s] anything short of an unambiguously conferred right to support a cause of action brought under § 1983." Specifically, Gonzaga stated that some courts interpreted Blessing as allowing plaintiffs to enforce a statute under § 1983 so long as the plaintiff falls within the general zone of interest that the statute intended to protect; something less than what is required for a statute to create rights enforceable directly from the statute itself under an implied right of action. 536 U.S. at 283, 122 S.Ct. 2268. The Gonzaga Court stated that for a statute to confer a private right of action, the statutory language must be "`phrased in *1250 terms of the persons benefited.'" Id. at 284, 122 S.Ct. 2268 (quoting Cannon v. Univ. of Chicago, 441 U.S. 677, 692 n. 13, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)).
Thus, to support a cause of action under § 1983, the statute must contain rights-creating language unequivocally conferring an individual right. As an example of the kind of language that would pass this test, the Court cited Title IX, which states: "No person in the United States shall, on the basis of sex, ... be subjected to discrimination under any education program or activity receiving Federal financial assistance." Id. (quoting 20 U.S.C. § 1681(a)) (emphasis in original).
Plaintiff does not contend that the authorizing provision of the Medicaid Act[4] passes the Gonzaga test, perhaps aware of the weight of authority to the contrary. See M.A.C. v. Betit., 284 F.Supp.2d 1298, 1306 (D.Utah 2003) (finding the "authorizing provision of the Medicaid Act does not contain rights-creating language unequivocally conferring an individual right to support a cause of action under § 1983"); Sabree v. Houston, 245 F.Supp.2d 653, 659 (E.D.Pa.2003).
The court therefore examines whether the two particular provisions[5] of the Medicaid Act relied upon by plaintiff pass the Gonzaga test. The first subsection requires that a State plan for medical assistance "include reasonable standards ... for determining eligibility for and the extent of medical assistance under the plan which are consistent with the objectives of this subchapter." 42 U.S.C. § 1396a(a)(17). Such language imposes only a duty on the State, and creates no rights in individuals, and thus does not support a right of action under § 1983.
The language of 42 U.S.C. § 1396a(a)(8) raises a closer question, in requiring a State plan for medical assistance to "provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." This language creates a duty of the State to furnish "medical assistance" with reasonable promptness, but does not contain the explicit rights-creating language described in Gonzaga. See M.A.C. v. Betit, 284 F.Supp.2d at 1306 (D.Utah 2003) (finding the reasonable promptness provision merely places certain conditions upon a state seeking Medicaid funding). The court is not aware of any post-Gonzaga case which has held to the contrary.
Further, assuming, arguendo, that the State's duty noted above gives rise to a correlative right of an eligible individual to receive "medical assistance" in a reasonably prompt manner, plaintiff's argument nonetheless fails because the statutory reference to "assistance" appears to refer to "financial assistance rather than to actual medical services." Bruggeman ex rel. Bruggeman v. Blagojevich, 324 F.3d 906, 910 (7th Cir.2003) (finding "what is required is a prompt determination of eligibility and prompt provision of funds to eligible individuals to enable them to obtain the covered medical services that they need, see 42 C.F.R. §§ 435.911(a), 435.930(a)-(b); a requirement of prompt treatment would amount to a direct regulation *1251 of medical services.") See 42 U.S.C. § 1396d ("The term `medical assistance' means payment of part or all of the cost of the following care and services ...") The statute simply provides no support for plaintiff's claim that he has a right or entitlement to a specific piece of durable medical equipment.
For the reasons set forth above, the court finds no private right of action under the medicaid statutes alleged which is enforceable under 42 U.S.C. § 1983.

Equal Protection clause
Plaintiff additionally claims a violation of the equal protection clause by the individual defendants acting in their official capacities. The equal protection clause in Fourteenth Amendment to the United States Constitution declares that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." This clause "keeps governmental decision makers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992).
The Equal Protection Clause does not generally require accommodations on behalf of the disabled by the states. See Garrett, 121 S.Ct. at 964; Thompson, 278 F.3d at 1031. The court's task in this case is limited to determining whether the challenged statute is rationally related to a legitimate legislative goal.
It is well established that for purposes of the equal protection analysis, the disabled do not constitute a suspect class. Welsh v. City of Tulsa, 977 F.2d 1415, 1420 (10th Cir.1992). Nor is there a fundamental constitutional right to receive Medicaid benefits. "[W]hen reviewing class distinctions drawn in social legislation not pertaining to a fundamental right or a suspect class, our review is [therefore] limited to determining whether the statute is rationally related to legitimate legislative goals." Hassan v. Wright, 45 F.3d 1063, 1068 (7th Cir.1995) (internal quotation marks omitted).
Vaughn v. Sullivan, 906 F.Supp. 466 (S.D.Ind.1995). See generally, In Spragens v. Shalala, 36 F.3d 947 (10th Cir.1994) (finding Social Security regulations that distinguished between blind and non-blind disabled recipients did not violate the equal protection clause).
Plaintiff's equal protection claim is that SRS had no rational basis for denying him the Vest because he has the same symptom as those who receive the Vest, although he lacks the same diagnosis. This claim, as expressed in his amended complaint, states:
The exclusion of [the Vest] for Stuart Sanders lacks a rational basis because the device is medically necessary and appropriate for Stuart Sander's multiple conditions and because other eligible Medicaid beneficiaries with the identical symptoms are able to obtain the device. There is no rational distinction between the mucus that accumulates in Stuart Sander's lungs due to his severe hyper-secretory condition that has developed as a result of multiple sclerosis and mucus that accumulates in patients with cystic fibrosis. Both conditions express the same symptom of thick mucus in the airways and both conditions require effective airway clearance.
Dk 14, ¶ -19.
The court finds that the relevant comparison in this analysis is not between the substance in plaintiff's lungs and the substance in the lungs of persons with cystic fibrosis. Rather, the proper inquiry is solely whether SRS's policy or regulation which led to its denial of plaintiff's request for the Vest is rationally related to a legitimate regulatory goal. The underlying federal purpose is to provide the service to *1252 those in greatest need of it. Ohlson v. Weil, 953 P.2d 939, 944 (Colo.App.1997). When matters of health and safety are at issue, great judicial deference is owed to the legislative judgment. Williamson v. Lee Optical, 348 U.S. 483, 487-88, 75 S.Ct. 461, 99 L.Ed. 563 (1955). SRS's articulated policy is to determine payment for the Vest based on medical necessity. This policy is rationally related to the legitimate governmental interest in limiting the service to those in greatest need of it.
But even if SRS denied the Vest on the grounds claimed by plaintiff, no cause of action is stated. SRS could rationally determine that the hardships facing institutionalized persons who have cystic fibrosis and are under 21 years of age are more substantial than those facing persons otherwise disabled. At the very least, "protecting the fisc provides a rational basis for [the state's] line drawing in this instance." Hassan, 45 F.3d at 1069; see also Cherry by Cherry v. Sullivan, 30 F.3d 73, 75 (7th Cir.1994) (states have "a legitimate interest in controlling Medicaid expenditures and seeing that Medicaid dollars are allotted to only the truly needy recipients"). Plaintiff thus fails to state a claim for relief under the equal protection clause.

Procedural due process
Plaintiff further contends that the individual defendants in their official capacities violated his "substantive and procedural due process rights" under the Fourteenth Amendment to the United States Constitution "because the defendants have arbitrarily denied the Vest System without regard to his medical need for the equipment." Dk. 14, ¶ 19.
"To state a claim for a violation of due process, plaintiff must first establish that it has a protected ... interest and, second, that defendants' actions violated that interest. (Citation omitted)." Crown Point I, LLC v. Intermountain Rural Elec. Ass'n, 319 F.3d 1211, 1216 (10th Cir.2003).
... the Constitution does not protect procedure for procedure's sake. The Fourteenth Amendment, by its terms, does not guarantee due process; it protects against deprivations of life, liberty, or property without due process. Unless a person asserts some basis for contesting a governmental deprivation of life, liberty, or property, he is not injured by defective procedures he has no occasion to invoke.
Rector v. City and County of Denver, 348 F.3d 935, 943-44 (10th Cir.2003).
Plaintiff's allegations, even when viewed in the light most favorable to plaintiff, fail to state a claim of a procedural due process violation. Plaintiff alleges no protected property interest in the Vest, i.e., that the procedures, if followed by SRS, would have required him to obtain the Vest. "A property interest includes a `legitimate claim of entitlement' to some benefit created and defined by `existing rules or understandings that stem from an independent source such as state law.' "Id., citing Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Nor does the amended complaint contend that plaintiff was deprived of any liberty interest, or was due any more process than he already received.

Substantive due process
Plaintiff alleges that "the defendants have arbitrarily denied the Vest System without regard to his medical need for the equipment." Dk. 14, ¶ 19. To state a substantive due process claim based upon a specific use of executive power, however, the complaint must allege that the decision is arbitrary, or shocking to the conscience. See Butler v. Rio Rancho Public Schools Bd. of Educ., 341 F.3d 1197, 1200 1201 (10th Cir.2003).
*1253 This district has traditionally applied the "shock the conscience" test in examining claims of substantive due process.
"The Due Process Clause `is not a guarantee against incorrect or ill-advised [government] decisions.'" Rather, the Due Process Clause "was intended to prevent government `from abusing [its] power, or employing it as an instrument of oppression.' "Accordingly, conduct that is arbitrary or conduct that "shocks the conscience" in a constitutional sense are the only governmental actions that can form the basis for a substantive due process claim.
Becerra v. Unified Government of Wyandotte County/Kansas City, Kansas, 272 F.Supp.2d 1223, 1229 (D.Kan.2003) (footnotes omitted). See Rector v. City and County of Denver, 348 F.3d 935 (10th Cir.2003).
Plaintiff fails to allege facts which, if true, would suffice to demonstrate that the refusal to grant him a Vest violated the applicable standard. In short, nothing alleged in the complaint shocks the conscience of the court. Nor has plaintiff suggested that the Medicaid payment procedures implicate any historically protected fundamental rights.[6]
Accordingly, the court finds that plaintiff's allegation of a due process violation fails to state a claim.
IT IS THEREFORE ORDERED that defendants' motions to dismiss (Dk. 19 & 16) are granted, and that plaintiff's motion for oral argument (Dk.26) is denied.
NOTES
[1] Defendants do not contend that plaintiff failed to exhaust his administrative remedies the ADA or the Rehabilitation Act.
[2] The statute provides that a State shall not be immune under the Eleventh Amendment from suit in Federal court for a violation of section 504 of the Rehabilitation Act, title IX, the Age Discrimination Act, title VI of the Civil Rights Act, "or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance." Plaintiff has not shown that the ADA, which prohibits discrimination by public and private entities, or § 1983, is among the federal statutes prohibiting discrimination "by recipients of Federal financial assistance."
[3] 42 U.S.C. § 1983 provides: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...
[4] 42 U.S.C. § 1396.
[5] Although plaintiff cites to a third provision, commonly known as the "equal access" provision, in his brief, his pleading contains no reference to that statute, 42 U.S.C. § 1396a(a)(3)(A), thus the court finds it unnecessary to address it herein. Had the court done so, however, it would have found no private right of action by virtue of its language, as measured against the requirements clarified in Gonzaga.
[6] "Executive policymaking actions or legislative acts constitute substantive due process violations only if plaintiffs objectively show that such rights are rooted in our nation's history and provide a careful description of the asserted fundamental liberty interest. Washington v. Glucksberg, 521 U.S. 702, 720-21, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997)." Rector v. City and County of Denver, 348 F.3d 935, 948 (10th Cir.2003).